## WILLIAM E. HERRING *v.* COMMISSIONER OF INTERNAL REVENUE.*

No. 176. Argued November 16, 1934.—Decided December 3, 1934.

---

* Together with No. 177, *Eula Day Herring* v. *Commissioner,* certiorari to the Circuit Court of Appeals for the Fifth Circuit,

*Mr. Robert Ash,* with whom *Mr. Leslie E. Martlew* was on the brief, for petitioners.

*Assistant to the Attorney General Stanley,* with whom *Solicitor General Biggs, Assistant Attorney General Wideman,* and *Messrs. Sewall Key* and *J. Louis Monarch* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioners are husband and wife and the income which gives rise to this controversy is derived from community property. We are to determine whether, in computing net income under the Revenue Act of 1926, they were entitled to deduct from advance royalty or bonus received upon the execution of oil and gas leases the statutory percentage allowance for depletion, it appearing that there was no production when the leases were made, or at any time within the taxable year.

The petitioners' community estate held a half interest in a partnership whose principal business was cattle raising. The firm owned a tract near Amarillo, Texas. In 1926 it leased portions of this land for the purpose of

mining and operating for oil and gas. In that year the lessees paid an aggregate of $683,793.75 as advance royalties or bonuses, and were obligated to pay additional royalties of one-eighth of the product or its value as oil and gas were extracted. The leases were for terms of five years and so long thereafter as oil and gas should be produced. When the instruments were executed there was no oil well within three and a half miles of the demised land. The lessors had no right to compel the drilling of wells and none were put down during 1926. In 1930 four were drilled which proved to be commercial gas wells, all made a showing of oil, and one produced from eight to ten barrels a day.

In their tax returns for 1926 the petitioners each claimed a pro rata share of a depletion allowance of $188,043.28, being 27½ per cent. of the bonus payments to the partnership. The Commissioner disallowed the claim. The Board of Tax Appeals sustained his decision. The Circuit Court of Appeals affirmed the Board's action.[1] We granted certiorari.[2]

The pertinent sections of the Revenue Act of 1926 are 214 (a) (9) granting a reasonable deduction for depletion in the case of oil and gas wells, and 204 (c) (2) permitting computation of the allowance at 27½ per centum of the gross income from the property.[3]

A bonus is not proceeds from the sale of property, but payment in advance for oil and gas to be extracted, and is therefore taxable income.[4] As such it is a part of the " gross income from the property " as the phrase is used in § 204 (c) (2) to designate the base for the application of the percentage deduction. From these premises the

---

[1] 70 F. (2d) 785.

[2] *Post,* p. 541.

[3] 44 Stat. 9, 14, 26–27; U. S. C. App. Tit. 26, §§ 935, 955.

[4] *Burnet* v. *Harmel,* 287 U. S. 103; *Murphy Oil Co.* v. *Burnet, id.* 299; *Bankers Pocahontas Coal Co.* v. *Burnet, id.* 308.

petitioners argue that the bonus received does not lose its character as income subject to depletion, merely because it happens that in the year of receipt there was no production of the depletable asset.

The respondent replies that the allowance for depletion is a matter of grace, not of right, and that the act fails to grant any allowance on income such as that here involved. The argument is that in both the relevant sections of the act, the statute says " in the case of . . . oil and gas wells " and this expression necessarily excludes a case where no well exists. In support of this asserted statutory exclusion it is urged that a depletion allowance is essentially and exclusively reimbursement for wastage or exhaustion of assets, and Congress could not have meant to permit an allowance in any year in which there was no extraction of oil or gas, and no practical assurance of production in the future. We think these arguments cannot prevail to defeat the petitioners' right to the deduction.

Each of the Revenue Acts, 1916 to 1934 inclusive, has granted as a deduction from gross income a reasonable allowance for depletion " in the case of . . . oil and gas wells." [5] The regulations under the 1926 Act and its predecessors dealing with cost depletion treated bonus or advanced royalty as subject to depletion,[6] and these have been approved by reënactment of the statutory provision without alteration. That, under the law and the regulations, a lessor is entitled to a depletion allowance on bonus payments is settled by the decisions of this court.[7] It

[5] See *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459; *Helvering* v. *Twin Bell Oil Syndicate*, No. 170, decided this day, *ante*, p. 312; R. A. 1932, § 23 (l) 47 Stat. 169, 181; R. A. 1934, § 23 (m) 48 Stat., 680, 689.

[6] *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299, 303.

[7] *Burnet* v. *Harmel, supra; Murphy Oil Co.* v. *Burnet, supra; Palmer* v. *Bender*, 287 U. S. 551.

has never been held here that the existence of a well conditioned the right to depletion. Nor, until recently, has the Treasury so ruled. After the decision of the *Murphy Oil Co.* case, *supra,* there arose a doubt as to how the flat percentage allowance first permitted by the Act of 1926 should be applied to bonus payments. In answer to a request, the General Counsel of the Bureau of Internal Revenue rendered an opinion[8] in which he said:

" The four situations to which attention is called are as follows:

"(1) No oil being produced when the bonus was received, but future production practically assured because of nearby wells and geological indications.

"(2) No oil being produced when the bonus was received, but property became productive within the taxable year.

"(3) No oil being produced when the bonus was received, and not more than a speculative prospect of future oil production at that time, but property is now known to have become productive after the taxable year.

"(4) Property has never become productive."

and held that depletion should be allowed in situations (1) and (2) and denied in situations (3) and (4).

In the present case the Board of Tax Appeals followed an earlier decision in which it had referred to portions of the General Counsel's opinion with disapproval, but found it unnecessary to decide whether it was sound.[9] In that case no well had been drilled on the leased property within the taxable year in which the bonus was paid, and the Board, saying that depletion could not be allowed except as an incident of actual production, refused the claimed percentage deduction. In a later case[10]

---

[8] G. C. M. 11384, XII–1 Cumulative Bulletin 64.

[9] Glide *v.* Commissioner, 27 B. T. A. 1264. See also Umsted *v* Commissioner, 28 B. T. A. 176, affirmed 72 F. (2d) 328.

[10] Sneed *v.* Commissioner, 30 B. T. A. 1121.

where it appeared the whole of the petitioner's land was proved oil and gas territory. and a gas well had been drilled in a prior year and shut in for lack of pipe-line facilities, so that there was no actual production during the taxable year in which the bonus was received, the Board overruled the taxpayer's claim for depletion, adhering to its position that production during the year was prerequisite to any allowance and refusing to follow General Counsel's opinion.

The situation presented by the administrative rulings is this: A bonus is not a receipt from a sale of a capital asset and may not be returned as such; it is income in the year received; if any depletion is to be allowed against the receipt, the allowance must be claimed for the year of receipt; it cannot be allowed in any later year; [11] if the taxpayer computes depletion upon the basis of cost or March 1, 1913 value he may deduct depletion from a bonus payment, irrespective of the sinking of a well or the production of any oil or gas; [12] if, however, he elects to avail himself of the alternative method of computing deduction at a per cent. of gross income, though the nature of the deduction is unchanged,[13] he may not have any unless there be production within the taxable year; if the production be but trifling he may take a full percentage deduction upon the entire bonus, however disproportionate the allowance to the actual extraction of oil during the year. To condition the allowance on actual production, however small, or the imminent probability of production, and to deal in refinements as to the degree of probability of future production, is in many cases to deny any deduction where the taxpayer elects to compute it under 204 (c) (2), flat percentage of gross income from

[11] Compare *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301, 306.

[12] See the regulations cited in *Murphy Oil Co.* v. *Burnet, supra,* at p. 303.

[13] *United States* v. *Dakota-Montana Oil Co., supra,* at p. 467.

the property, and permit it where he elects to compute it under 204 (c), on the basis of cost. But the nature and the purpose of the allowance is the same in both cases, and we find neither statutory authority nor logical justification for withholding it in the one and granting it in the other; much less for making the decision turn upon the circumstance that no production is obtained within the year in which the bonus is paid.

As to income tax liability in the year of termination of the lease, on account of bonus paid at the execution of the lease, if no mineral has then been extracted, we express no opinion.

The judgments are                          *Reversed.*