*Decision will be entered under Rule 50.*

GRACE M. BARNETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90655. Promulgated May 17, 1939.

*Charles F. Byers, Esq.*, for the petitioner.

*James H. Yeatman, Esq.*, for the respondent.

Briefs were filed as *amici curae* by *Harry C. Weeks, Esq.*, and *R. B. Cannon, Esq.*

OPINION.

MURDOCK: The Commissioner determined a deficiency of $341.55 in the income tax liability of the petitioner for the calendar year 1935. The facts in the case have been stipulated and are hereby found as stipulated. The only issue for decision is whether the Commissioner erred in including $6,779.93 in the petitioner's income for 1935. He explained his action as follows:

In accordance with the provisions of Article 23 (m)–10 of Regulations 86, there was allowed in the year 1934 a deduction of $11,000.00 as statutory depletion on $40,000.00 cash bonus received during the year as part consideration for the granting of an oil and gas lease on 391.1 acres. During the year 1935, 241 acres of the 391.1 acres were, in accordance with provisions of the lease contract released and restored to taxpayer. Held that the portion of the $11,000.00 depletion allowance for the year 1934 applicable to the 241 acres constitutes taxable income in the year 1935. Article 23 (m)–10 (c) and G. C. M. 14448, C. B. XIV–1.

The petitioner owned as her separate property a piece of land in Texas, containing about 391.1 acres. She leased this entire piece of property on May 8, 1934, to the Southwest Oil Co. to permit the latter to drill for and produce any oil, gas, or other mineral which might be found. The lessee paid to the petitioner in 1934 $40,000 in cash as part consideration for the granting of the lease. The Commissioner, in determining the petitioner's income tax liability for the year 1934, included the $40,000 in her gross income and allowed a deduction for depletion of 27½ percent thereof, or $11,000. The parties agree that the Commissioner made no error in his determination for the year 1934. *Herring* v. *Commissioner*, 293 U. S. 322.

The lease was to continue for a term of years and the lessor was to receive additional payments out of production. However, the lease was to terminate at the end of the first year unless drilling had been commenced prior to that time or unless the lessee had paid to the lessor a rental fixed at $1,955.50 for the entire acreage. The lessee could deliver a release covering any portion of the premises, relieving itself of all obligations as to the acreage surrendered, and thereafter the rentals payable should be reduced in proportion to the reduction in acreage affected by the release.

The lessee did not commence any drilling operations and nothing was extracted from the acreage during the first year. The lessee "failed to pay the petitioner the sum provided * * * to cover the privilege of deferring for 12 months from May 8, 1935, the com-

mencement of drilling operations on 241 of the 391.1 acres covered by the lease, and as of May 8, 1935, the lease terminated and expired as to said 241 acres without any oil or gas or other mineral substances having been extracted or produced."

The parties have agreed "that $6,779.93 of the depletion of $11,000 allowed as a deduction on the $40,000 lease bonus in computing petitioner's net income for [1934] is applicable to the 241 acres as to which the lease expired in 1935."

The petitioner does not argue that percentage depletion allowed for 1934 on account of the bonus should not be restored to income of the year in which the lease terminates where no oil or gas is ever extracted from the leased premises, but contends that there should be no restoration in 1935 because the lease did not terminate in that year as to all of the land covered by the lease. The respondent points to the stipulation that the lease terminated on May 8, 1935, as to 241 of the 391.1 acres covered by the lease, no oil or gas was extracted from the 241 acres, and $6,779.93 of the percentage depletion allowed as a deduction in 1934 was applicable to the 241 acres. The respondent then argues that it is entirely immaterial in the light of this stipulation whether or not the lessee forfeited the lease in 1935 as to the remaining acreage. The only argument advanced by the petitioner is not supported by the facts. We perceive no flaw in the respondent's contention.

Furthermore, there appears to be no sound reason for reversing the determination of the Commissioner. All of the regulations, beginning with Regulations 45, covering the Revenue Act of 1918, have provided that if depletion is allowed with respect to an advance royalty or bonus and no production occurs during the life of the lease, the lessor must restore to his capital account and report as income in the year the lease terminates the amount which he has been allowed to deduct as depletion in connection with the advance payment. See Regulations 45, art. 215, as amended by T. D. 3938, C. B. V-2, p. 117, and corresponding provisions in later regulations. Percentage depletion was first allowed by the Revenue Act of 1926, and the method above described was continued. See Regulations 69, art. 215. The regulations continued the method under the Revenue Act of 1934. See Regulations 86, art. 23 (m)-10. The Supreme Court, in *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299, considered and approved this method of allowing and adjusting deductions for depletion, as is shown by the following quotation from the opinion:

We think the Commissioner's method "reasonable" within the meaning of the statute. The deduction for depletion from the bonus payments, which the statute requires, must either be made after the process of extracting the oil is complete, to the extent that the royalties received have been insufficient to replace invested capital, with the attendant inconvenience of indefinite post-

ponement of the allocation of the bonus to income and return of capital, or a formula must be adopted by which the appropriate allocation may be made as the two classes of gross income, bonus and royalties, are received.

That formula the regulation purports to furnish. Where the estimates are reasonable, the formula affords a fair and convenient method of avoiding the present taxation of the bonus, when received, as income, in the face of the probability that it will ultimately prove not to be such. It will not fail to provide, with reasonable certainty, for the restoration of capital to which the taxpayer is entitled, if the oil extracted equals or exceeds the amount originally estimated. If less than that amount, it does not preclude revision and necessary adjustments, as errors appear probable. In addition, provision is made by subdivisions (c) and (d) of the regulation, as amended, for such necessary capital readjustments as may be occasioned by the termination, abandonment or expiration of the lease before all the oil is extracted.

The reasonableness and desirability of such a regulation, whether applied to deductions based upon cost or upon percentage, is adequately shown by the discussion of the Supreme Court in the *Murphy Oil Co.* case already quoted. The following quotation from *Herring* v. *Commissioner, supra,* seems unimportant in view of the statements contained in the *Murphy Oil Co.* case:

As to income tax liability in the year of termination of the lease, on account of bonus paid at the execution of the lease, if no mineral has then been extracted, we express no opinion.

Likewise unimportant now is the decision in *Kittie A. Knapp*, 7 B. T. A. 790. The repeated reenactment by Congress of the provisions relating to depletion would seem to give to the long established and uniform regulations of the Commissioner the force and effect of law. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110.

Finally, the present case is analogous to a number of others, where, with or without a supporting regulation, an adjustment has been made during the taxable year in which actually no income was received. See *Estate of William H. Block*, 39 B. T. A. 338, and many cases there cited. See also *Houbigant, Inc.*, 31 B. T. A. 954; affd. per curiam, 80 Fed. (2d) 1012. Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. When some event occurs which is inconsistent with a deduction taken in a prior year, adjustment may have to be made by reporting a balancing item in income for the year in which the change occurs. This petitioner was able to offset a portion of the payment received in 1934 by a deduction for depletion and thus escape income tax on that portion of the payment. The deduction allowed for 1934 was proper but was granted conditionally. The petitioner by accepting the reduction also accepted the condition provided in the regulations. Depletion is an allowance made for exhaustion of the property. The

lease was terminated in 1935 without any exhaustion ever having taken place. The petitioner thereupon became required under the regulations to restore to income the amount previously allowed as a deduction in respect to the 241 acres. There was no error in the determination of the Commissioner.

Reviewed by the Board.

*Decision will be entered for the respondent.*

SMITH, dissenting: The Revenue Act of 1934 provides in part as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*

(n) BASIS FOR DEPRECIATION AND DEPLETION.—The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114.

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

Article 23 (m)–10 of Regulations 86, promulgated under the provisions of the Revenue Act of 1934, provides as follows:

ART. 23 (m)–10. *Depletion—Adjustments of accounts based on bonus or advanced royalty.—(a)* If a lessor receives a bonus in addition to royalties, there shall be allowed as a depletion deduction in respect of the bonus an amount equal to that proportion of the basis for depletion as provided in section 114 (b) (1) or (2) which the amount of the bonus bears to the sum of the bonus and the royalties expected to be received. Such allowance shall be deducted from the lessor's basis for depletion, and the remainder is recoverable through depletion deductions on the basis of royalties thereafter received.

(b) If the owner has leased a mineral property for a term of years with a requirement in the lease that the lessee shall extract and pay for, annually, a specified number of tons, or other agreed units of measurement, of such mineral, or shall pay, annually, a specified sum of money which shall be applied in

payment of the purchase price or royalty per unit of such mineral whenever the same shall thereafter be extracted and removed from the leased premises, an amount equal to that part of the basis for depletion allocable to the number of units so paid for in advance of extraction will constitute an allowable deduction from the gross income of the year in which such payment or payments shall be made; but no deduction for depletion by the lessor shall be claimed or allowed in any subsequent year on account of the extraction or removal in such year of any mineral so paid for in advance and for which deduction has once been made.

(c) If for any reason any such mineral lease expires or terminates or is abandoned before the mineral which has been paid for in advance has been extracted and removed, the lessor shall adjust his capital account by restoring thereto the depletion deductions made in prior years on account of royalties on mineral paid for but not removed, and a corresponding amount must be returned as income for the year in which the lease expires, terminates, or is abandoned.

(d) In lieu of the treatment provided for in the above paragraphs the lessor of oil and gas wells may take as a depletion deduction in respect of any bonus or advanced royalty from the property for the taxable year 27½ per cent of the amount thereof; and the lessors of sulphur mines, metal mines, and coal mines may take as a depletion deduction in respect of any bonus or advanced royalty from the property for the taxable year beginning after December 31, 1933, for which he first makes return in respect of the property (and for subsequent taxable years in case an election to have depletion computed on a percentage basis has been exercised in the proper return) 23 per cent, 15 per cent, and 5 per cent, respectively, of the amount thereof; but the deduction shall not in any case exceed 50 per cent of the net income of the taxpayer (computed without allowance for depletion) from the property.

This regulation is consonant with similar provisions promulgated under the Revenue Act of 1926, the Revenue Act of 1928, and the Revenue Act of 1932. See Regulations 67, art. 216; Regulations 74, art. 236; Regulations 77, art. 230.

It will be noted that paragraphs (a), (b) and (c) of article 23 (m)–10 of Regulations 86 deal with "cost" depletion. They do not deal with "percentage" depletion. Paragraph (d) deals with "percentage" depletion. It states that "In lieu of the treatment provided for in the above paragraphs" etc. Nothing is said in paragraph (d) about restoring to "capital account" any portion of the depletion claimed for earlier years.

Apparently the respondent so construed his regulations until after the decision of the Supreme Court in *Herring* v. *Commissioner*, 293 U. S. 322. He then issued General Counsel Memorandum 14448 contained in Cumulative Bulletin XIV–1 (1935), page 98. In that memorandum it is stated:

In its opinion in *William E. Herring* v. *Commissioner, supra*, the Supreme Court made the statement that it expresses no opinion as to whether the amount allowed as a depletion deduction from the bonus payment in the year of the execution of the lease may be taxed as income to the lessor in the year of the termination of the lease where there has been no extraction of mineral from the leased premises. * * *

It then states:

\* \* \* Since the "nature and purpose of the allowance is the same," as the Supreme Court has pointed out, whether the deduction be computed on the cost basis or on a per cent of the gross income from the property it follows that the taxpayer must be deemed to have taken the bonus depletion deduction on the percentage of income basis on the condition that he will restore the amount of such deduction to income as of the year of the termination of the lease where there has been no production from the leased premises.

It was not until 1935 that the respondent construed article 23 (m)–10 of Regulations 86 as it has been construed in the proceeding at bar. In other words, the respondent has accepted the decision in *Herring* v. *Commissioner, supra,* as deciding what it expressly says it does not decide.

In the majority opinion the decision of the Supreme Court in *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299, is relied upon as warranting the inclusion in the gross income of the lessor of an oil lease, in the year of the termination of the lease, of a part of the depletion allowance which the petitioner was permitted to take in a prior year. I do not think that the opinion of the Supreme Court in the *Murphy Oil Co.* case supports such view. In that case the Court stated:

\* \* \* The question to be decided is whether the Commissioner correctly calculated the deduction for depletion for the years in question, by treating the bonus previously received by the petitioner, as a *return of capital* and by reducing pro tanto the depletion allowed on the royalties received in later taxable years. [Italics supplied.]

The Court was dealing there with "cost" depletion and not with "percentage" depletion. Manifestly, "cost" depletion is to be determined on a different basis from "percentage" depletion. In the one case the depletion deduction is to be limited by the cost or value of the depletable property. In the other it is not. This is recognized by the Commissioner's regulations; for, in article 23(m)–1 of Regulations 86 it is stated: "(1) In the case of \* \* \* oil and gas wells the aggregate annual allowable deductions may, because of percentage depletion, ultimately exceed the cost or other basis."

The depletion allowance under the Revenue Act of 1934 is an amount not exceeding 27½ percent of the gross income from the property during the taxable year and not exceeding 50 percent of the net income. Since it is apparent from the decision of the Supreme Court in *Herring* v. *Commissioner, supra,* that the petitioner was entitled to deduct from the gross income of 1934 an allowance for depletion, why should the benefit of that deduction be taken away in part by requiring her to include in her gross income for 1935 a part of the depletion allowance to which she was entitled for 1934? Did the petitioner receive any income in 1935? If the lessee had drilled for oil upon the demised property and found that there was

none in it and abandoned the lease in 1935, would the lessor have received income in 1935 from the abandonment of the lease? I do not think so.

The Revenue Act of 1934 permits the deduction of a depletion allowance in the case of oil and gas wells equal to a percentage of the income from the property. It is not limited by cost or value. The right to that deduction is not abridged by the Commissioner's regulations, as I read them. If there is doubt upon this point I think it should be resolved in favor of the taxpayer.

I do not think there is any merit in the statement in the majority opinion that the regulations of the Commissioner promulgated under the Revenue Acts of 1926 to 1934, inclusive, have the force of law by reason of the successive enactments without change of the revenue acts permitting the deduction from gross income of percentage depletion, since the regulations do not require the adjustment of the capital account in case no oil is found in the land. There is no capital account to be adjusted. The regulations provide for an adjustment of capital accounts only where depletion is taken upon a cost or value basis. No adjustment is provided for where depletion is taken on the percentage basis.

ARUNDELL agrees with this dissent.