*Decision will be entered under Rule 50.*

J. T. SNEED, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94400. Promulgated December 15, 1939.

*H. C. Pipkin, Esq., Chas. H. Keffer, Esq.,* and *Harry C. Weeks, Esq.,* for the petitioner.

*Paul E. Waring, Esq.,* and *Elizabeth B. Fegan, Esq.,* for the respondent.

1138

OPINION.

BLACK: In our findings of fact, no emphasis is laid on the facts that petitioner was married in 1926, a portion of the lands leased was community property, his wife, Zella Sneed, died prior to 1936, and other related matters. The parties are in agreement that the Commissioner has given proper effect to these facts in his determination of the deficiency, if it is otherwise correct.

The petition, as we have already stated, contains only one assignment of error, to wit, that the Commissioner erred in restoring to

petitioner's income in 1936, depletion which was deducted in 1926 from lease bonuses, where, upon the expiration of leases, there had been no oil or gas production thereon. The petitioner, in pressing this assignment of error, raises several points which we think merit separate consideration and we shall take these points up in their order.

First, petitioner makes the broad general contention that the sums which respondent has restored to petitioner's income for 1936 under the circumstances narrated in our findings of fact do not come within the definition of gross income contained in the Revenue Act of 1936 and that respondent's regulations upon which he relies do not purport to require their inclusion as income.

Petitioner presents forceful arguments in his brief in support of these contentions. However, substantially the same arguments and reasoning were used in behalf of the taxpayer in *Grace M. Barnett*, 39 B. T. A. 864, and we rejected them. Petitioner urges that our decision in that case was wrong and that we should reconsider the whole question and reverse our position. We are not convinced that our decision in that case was wrong and so we adhere to it. We do not consider that it is necessary to repeat in this opinion the reasons which we gave for reaching our conclusions in the *Barnett* case. Inasmuch as we adhere to the same conclusions on the general proposition involved as we expressed in the *Barnett* case, we refer to the reasons which we gave in that case without restating them.

Second, petitioner, although questioning the soundness of our decision in the *Barnett* case, further contends that it is not controlling in the instant case because the facts in the instant case are distinguishable from those in the *Barnett* case.

Petitioner contends that although separate leases were made in 1926 covering separate tracts of land, nevertheless, since petitioner's ranch was "one property" as defined in the Commissioner's regulations, and since that property has sustained a substantial amount of depletion during the period 1926 to 1936, inclusive, from wells drilled on other leases located on the Sneed ranch, the petitioner is entitled to retain the benefit of all the depletion allowed to him in prior years. In other words, petitioner contends that he is entitled to an aggregate of percentage depletion allowance over the entire productive life of his property, equal to 27½ per centum of his gross income therefrom, and that the right to this does not depend upon the existence or nonexistence of any particular lease. We do not agree with this contention. Petitioner, in support of his contention, points out that the statutory language granting the depletion refers not to leases, but to property. The language is: "The allowance for

depletion \* \* \* shall be 27½ per centum of the gross income from the property."

Article 23 (m)–1 (j) of Regulations 94, following substantially similar regulations under earlier acts, defines "the property" as follows:

"The property", as used in section 114 (b) (2), (3) and (4) and articles 23 (m)–1 to 23 (m)–19, inclusive, means the interest owned by the taxpayer, freehold or leasehold, in any mineral property. The taxpayer's interest in each separate mineral property is a separate "property"; but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's interest in such mineral properties may be considered to be a single "property", provided such treatment is consistently followed.

In order to better understand the meaning of the foregoing regulation, we think it will be well to consider article 23 (m)–1, (b), which defines the meaning of the words "mineral property" as follows:

A "mineral property" is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface of the land only as is necessary for purposes of mineral extraction. The value of a mineral property is the combined value of its component parts.

We think paragraphs (b) and (j) of article 23 (m)–1, when construed together, mean that where a taxpayer is operating two or more separate mineral properties included in a single tract or parcel of land as a common enterprise, the two or more mineral properties may be considered as a single property. In *Vinton Petroleum Co. of Texas*, 28 B. T. A. 549; affd., 71 Fed. (2d) 420, the taxpayer was contending that it was entitled, under law and regulations similar to those quoted above, to combine the gross income from wells located on several different leases and compute the depletion deduction as if there were one single property. We denied this contention and held that the depletion deduction should be made with respect to each property separately.

Petitioner contends that in the *Vinton Petroleum* case, *supra*, there was no contention that the several tracts were part of one single tract, such as is present in the instant case in the Sneed ranch, that they were being operated by the taxpayer as one common enterprise. The facts show that Sneed was operating the cattle ranching business as one single business enterprise, but he was not operating any oil or gas wells at all. What he did do was to lease the land included in his ranch to various individuals and corporations by separate leases and received a separate bonus for each separate lease. In such circumstances we have heretofore treated each separate lease as a separate property.

See *Allie M. Turbeville*, 31 B. T. A. 283, at pages 292, 293. In that case, the taxpayer was the owner of the Copper Mine Ranch and leased the several tracts included in the ranch to various parties.

Bonuses were received as well as agreement to pay royalties from each separate lease. The taxpayer claimed percentage depletion on all the bonuses received. The Board granted percentage depletion on bonuses received from those leases where oil and gas had been produced during the taxable year and denied it as to those leases where there had been no production, following *Lizzie H. Glide*, 27 B. T. A. 1264. That was before the Supreme Court decided in *Herring* v. *Commissioner*, 293 U. S. 322, that percentage depletion was allowable on leasehold bonuses even where there had been no production during the taxable year. In the *Turbeville* case, the taxpayer argued that the Copper Mine Ranch should be treated as one single property for the purpose of determining percentage depletion on the bonuses and that the several different leases should not be treated as separate properties. Discussing the point raised by the taxpayer in that case, we said:

Respecting leases made after the discovery of oil on the ranch but under which no production was obtained in the year the bonuses were paid, petitioner argues that an allowance for depletion should nevertheless be made since there was production from "the property", being the whole ranch, which, it is stipulated, was one tract. With this we disagree. The term "the property" applies to the particular acreage covered by each of the several leases. [Citing *Vinton Petroleum Co., supra.*]

While it is true that we were in error in the *Turbeville* case in denying percentage depletion on the bonuses where there had been no production from the particular leases during the taxable year, it was not because of our holding that the acreage covered by each separate lease must be treated as a separate property. It was because of the Supreme Court's later decision in the *Herring* case. So far as the point we are now discussing is concerned, the *Turbeville* case still stands. It was in no way affected by the Supreme Court's decision in the *Herring* case. Therefore, following the *Turbeville* and the *Vinton Petroleum Co.* cases, we hold against petitioner's contention that all the tracts and parcels of land covered by the several leases must be treated as one single property because they are parts of the Sneed ranch.

Third, petitioner also contends that although the 26 leases involved in this proceeding had terminated without oil or gas having been produced therefrom, nevertheless, by virtue of production on other leases on his land (not here involved) as well as by production on adjoining lands belonging to others, the leases in question have sustained depletion through drainage. "Therefore" says petitioner, "the percentage deductions granted petitioner in 1926 should not be restored to income in 1936, because the lands involved have been actually depleted though not by any oil or gas wells drilled on the

particular leases." We do not think the contention of petitioner on this point can be sustained.

The testimony shows that quite a number of producing wells, mostly. gas wells, have been drilled on lands which petitioner leased in 1926, and large amounts of commercial gas have been extracted therefrom. The Commissioner has not restored to petitioner's income any of the percentage depletion deductions granted petitioner in 1926 by reason of bonuses received from these leases. These particular deductions not only remain deducted but petitioner is receiving percentage depletion deductions from the royalties which he receives annually from these wells, as he properly should. It is only in case of the leases which reverted to petitioner in 1936, without any production having been had thereon, and were surrendered to petitioner by their hitherto owners in that year, that the Commissioner has restored to income the depletion deductions granted petitioner in 1926. If the Commissioner's action in this respect is sound from the point of view discussed by us in the *Barnett* case, *supra*, then we do not think the action of the Commissioner is affected by the fact that there has been some incidental drainage of gas from under the lands because of wells drilled on other leases adjacent to those involved in this proceeding.

Experts, who apparently were well qualified to testify on the subject, testified that by reason of gas production on petitioner's ranch and the Panhandle Field in general, the gas pressure had been lowered on petitioner's land and that this lowering of the gas pressure meant a diminution of the gas which underlies the ranch. By means of computations which these experts made, they reached the conclusion that the gas underneath the leases here involved had been drained off on an average of 11 percent between 1926 and 1936, inclusive, by production from adjoining lands including those of petitioner, and from the field in general.

We have no independent knowledge of our own on the subject and we have made findings of fact in accordance with the testimony of these experts. However, as we have already stated, these facts, in our opinion, should not affect our decision. Accepting as true that certain diminution of gas has actually occurred by drainage from wells on other properties, it has not occurred from any production on any of the leases here involved. Neither the revenue laws nor the regulations provide for a depletion deduction based on drainage from wells drilled on contiguous tracts. Depletion, we think, is the term commonly used to describe the exhaustion of natural deposits by the extraction and sale of a part thereof. Fundamentally, the depletion allowance is granted for the purpose of allowing a return of capital,

tax free. With respect to the leases here involved, there had been no extraction of oil or gas up to the date of their surrender in 1936. Only by accepting petitioner's theory that his entire ranch should be treated as one property could we grant his contention on this point. That theory we have rejected in *Allie M. Turbeville, supra,* on the authority of *Vinton Petroleum Co., supra.* Petitioner's contention on this point is therefore rejected.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL and VAN FOSSAN dissent.