ESTATE OF CHARLES H. ROBINSON, NORTHWESTERN NATIONAL BANK AND TRUST COMPANY OF MINNEAPOLIS, JESSIE P. ROBINSON AND CHARLES J. ROBINSON, CO-EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BESSIE P. DOUGLAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF ADELINE R. MORSE, DECEASED, JOHN S. DALRYMPLE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BERNICE B. DALRYMPLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 102869, 102870, 102871, 106705. Promulgated April 14, 1942.

*Kimball B. DeVoy, Esq.*, for the petitioners.
*S. U. Hiken, Esq.*, for the respondent.

**OPINION.**

TURNER: The Commissioner determined deficiencies in income tax as follows:

| | Docket No. | Year | Deficiency |
| --- | --- | --- | --- |
| Estate of Charles H. Robinson | 102869 | 1937 | $1,532.38 |
| Bessie P. Douglas | 102870 | 1937 | 30,024.60 |
| Estate of Adeline R. Morse | 102871 | { 1937<br>1938 | 4,426.63<br>297.02 |

The Commissioner also determined a deficiency of $5,412.47 in the income tax of Irene B. Robinson Cirkler for the period January 1 to October 20, 1937, the date of her death, and proposed to assess said amount plus interest against Bernice B. Dalrymple, petitioner in Docket No. 106705, as a transferee of assets of the estate of Irene B. Robinson Cirkler, deceased.

The issues presented by the pleadings are (1) whether the owners of an iron ore property are entitled to a deduction for depletion in 1937 with respect to minimum royalties received in that year, the lease under which the royalties were paid having been terminated in that year without any ore having been removed from the property during the life of the lease, (2) whether in determining taxable income for 1937 there is to be included the amounts of the depletion deductions taken by said owners in prior years in respect to the above lease, and, if said amounts of depletion are to be included in taxable income for 1937, whether they are first to be reduced by the portions thereof as to which no tax benefit was obtained in the years in which deducted, and (3) in the case of the estate of Adeline R. Morse, deceased, whether there is to be allowed a deduction for depletion taken in 1938 with respect to royalties received in that year from the above mentioned lease. The petitioners have conceded the correctness of respondent's disallowance of the deductions involved in issues (1) and (3), thus leaving for determination only the issue presented in (2).

With the exception of the facts relating to the liability of Bernice B. Dalrymple as transferee, all of which were alleged and admitted

in the pleadings, the proceedings were submitted on stipulation of facts, which we adopt herein as part of our findings of fact. Such of the stipulated facts and of those shown by the pleadings as we deem necessary for a discussion of the issue here involved are set out below.

The income tax returns of the estate of Charles H. Robinson, Bessie P. Douglas, and Irene B. Robinson Cirkler for the year 1937 or the period here involved and the returns for 1937 and 1938 of Adeline R. Morse were filed with the collector of internal revenue for the district of Minnesota.

On July 1, 1929, as well as prior thereto, the four petitioners or their predecessors in title were owners of an iron mine situated in the State of Minnesota, known as the Pettit Mine, from which some iron ore had been removed. Bessie P. Douglas owned an undivided one-half interest in the mine and each of the others owned an undivided one-sixth interest.

On July 1, 1929, the four owners leased the mine to the Republic Steel Corporation for a term of 30 years commencing on that date. The lease provided that minimum royalties should be paid annually whether any ore was extracted during the year or not. Minimum royalties paid in advance of extraction of ore were to be applied on ore later mined and shipped. The lease also provided for its cancellation by the lessee, after a specified period, upon three months written notice to the lessors. As of July 1, 1937, the lessee, pursuant to the terms thereof, canceled and terminated the lease without having removed any ore from the mine during the existence of the lease.

From the date of the execution of the lease until its termination the lessee paid the agreed advance royalties to the lessors or their respective successors. Said lessors or successors in filing their income tax returns, which were prepared on the cash basis, reported in their gross incomes for the respective years the royalties received in such years and took deductions for depletion with respect to such royalties. The depletion deductions thus taken were computed on the cost basis and were allowed by the respondent.

In determining the deficiencies herein involved for the year 1937 the respondent, pursuant to the provisions of paragraph (c) of article 23 (m)–10 of Regulations 94, relating to the Revenue Act of 1936, included the following indicated amounts in the taxable income of the respective taxpayers:

| | |
|---|---|
| Estate of Charles H. Robinson | $9, 829. 14 |
| Bessie P. Douglas | 53, 299. 03 |
| Adeline R. Morse | 18, 180. 26 |
| Irene B. Robinson Cirkler | 18, 180. 26 |

The foregoing amounts represent the total of the depletion deductions claimed by and allowed to said taxpayers for the years prior to

and including 1936 with respect to the minimum royalties received by them from the lease on the Pettit Mine.

The petitioners contend that the respondent's action was erroneous and that in the redetermination of their respective tax liabilities for 1937 there should be eliminated from income the amounts included therein by the respondent on account of depletion deductions taken in prior years. The respondent maintains that his action was correct and proper.

Regulations 94 provides as follows:

ART. 23 (m)–10. *Depletion—Adjustments of accounts based on bonus or advanced royalty.—*

* * * * * * *

(b) If the owner has leased a mineral property for a term of years with a requirement in the lease that the lessee shall extract and pay for, annually, a specified number of tons, or other agreed units of measurement, of such mineral, or shall pay, annually, a specified sum of money which shall be applied in payment of the purchase price or royalty per unit of such mineral whenever the same shall thereafter be extracted and removed from the leased premises, an amount equal to that part of the basis for depletion allocable to the number of units so paid for in advance of extraction will constitute an allowable deduction from the gross income of the year in which such payment or payments shall be made; but no deduction for depletion by the lessor shall be claimed or allowed in any subsequent year on account of the extraction or removal in such year of any mineral so paid for in advance and for which deduction has once been made.

(c) If for any reason any such mineral lease expires or terminates or is abandoned before the mineral which has been paid for in advance has been extracted and removed, the lessor shall adjust his capital account by restoring thereto the depletion deductions made in prior years on account of royalties on mineral paid for but not removed, and a corresponding amount must be returned as income for the year in which the lease expires, terminates, or is abandoned.

In support of their contention the petitioners urge that the application of paragraph (c) of article 23(m)–10, *supra*, to their cases imposes upon them a severe penalty without justification. Taking the case of Bessie P. Douglas as illustrative, they state that by taking depletion deductions totaling $53,299.03 over the eight-year period, 1929 through 1936, she reduced her total income tax liability for that period by $6,923.51; that by including said $53,299.03 in income for 1937 her tax liability for that year is $26,550.65 in excess of what it was without such inclusion or approximately $20,000 more than the reduction effected by reason of the depletion deductions taken in prior years. They insist that such a result is violative of the provisions of section 23 (m) of the Revenue Act of 1936 and similar sections of prior acts allowing deduction of "a reasonable allowance" for depletion since in reality it works a denial to the taxpayers of such allowance. They contend that we should declare paragraph (c) of article 23 (m)–10, as applied to these cases, to be

invalid and unauthorized by the act. As alternative procedures to that contained in said paragraph (c), the petitioners suggest the following, both of which it is claimed would protect the collection of taxes and not unjustly burden the taxpayers: (1) Permit matters to stand as they were at the termination of the lease, thereby leaving the lowered cost as the taxpayers' basis for depletion with respect to future leases or production, or (2) provide that as a condition precedent to the allowance in any year of a depletion deduction with respect to royalties received prior to the extraction of mineral, the taxpayer be required to waive the period of limitations for such year and that when the lease is terminated without any extraction of mineral the taxpayers' tax liability be redetermined for the years in which depletion deductions were taken by disallowing such deductions and recomputing the tax liability on the basis of the tax rates in effect for the respective years.

As was pointed out in *Grace M. Barnett*, 39 B. T. A. 864, arising under the Revenue Act of 1934 and involving paragraph (c) of article 23(m)–10 of Regulations 86, all of the regulations, beginning with Regulations 45, relating to the Revenue Act of 1918, have provided that if depletion is allowed with respect to an advance royalty or bonus and no production occurs during the life of the lease, the lessor must restore to his capital account and report as income in the year the lease terminates the amount he has been allowed to deduct as depletion in connection with the advance payment, and that that method of allowing and adjusting deductions for depletion had been considered and in effect approved by the Supreme Court in *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299. That method was followed by us in the *Barnett* case and was applied in *Sneed* v. *Commissioner*, 119 Fed. (2d) 767; rehearing denied, 121 Fed. (2d) 725; certiorari denied, 314 U. S. 686, affirming 40 B. T. A. 1136; *Crabb* v. *Commissioner*, 119 Fed. (2d) 772, affirming 41 B. T. A. 686; and *Lamont* v. *Commissioner*, 120 Fed. (2d) 996. These cases are applicable in the instant proceedings and effectively dispose of the main contention of the petitioners.

It is to be observed that the hardship here complained of does not result entirely from the method set forth in the Commissioner's regulation but results in part from the fact that income tax rates were increased over the period 1929 to 1937 and the depletion deductions were taken, generally speaking, in years in which the incomes of the taxpayers were at comparatively low levels. Doubtless, there are cases where the taxpayers had high incomes during the years in which depletion deductions were taken but low incomes for the year in which the deductions are included in income and who would therefore pay less tax under the method contained in the regulations than if the deductions were disallowed for the years

in which they were taken. The next case coming before us may present just such a situation. The mere fact that due to his peculiar circumstances one taxpayer may, under the method contained in the regulations, effect a net saving in tax while another taxpayer differently circumstanced may pay more tax than he otherwise would, is not a sufficient reason for holding the method to be invalid in its application here. The uniformity required of tax laws is geographic uniformity, not intrinsic uniformity. *Bromley* v. *McCaughn*, 280 U. S. 124.

For the years 1933 and 1934 Bessie P. Douglas took and was allowed depletion deductions of $4,958.05 and $6,197.56, respectively, with respect to the minimum royalties received in those years from the lease on the Pettit Mine. Her net income or loss (after allowance of said deductions) and her income tax liability for said years as finally determined and assessed by respondent were as follows:

|  | Net loss | Net income | Income tax liability |
|---|---|---|---|
| 1933 | $13,947.51 | | none. |
| 1934 | | $3,160.10 | none. |

In the computation of her income tax liability for 1934 she claimed and was allowed a dividends received credit of $5,894.05 and an earned income credit of $300.

For the period August 16 to December 31, 1932, the net income of the estate of Charles H. Robinson was $620.87 after allowance of depletion of $413.19 on account of minimum royalties received in that period from the lease on the Pettit Mine. The estate was entitled to a personal exemption credit of $1,000.

With respect to Bessie P. Douglas, it is contended that the respondent erred in including in her 1937 income the amount of $4,958.05 representing the depletion deduction taken by her in 1933. It is also contended that the respondent erroneously included in income $839.90 of the depletion deduction taken by her for 1934. Said amount of $839.90 represents the difference between her net income of $3,160.10 for 1934 and $4,000, the amount above which her income was subject to surtax under the Revenue Act of 1934. With respect to the estate of Charles H. Robinson, it is contended that the respondent erroneously included in 1937 income $379.13 of the depletion allowance for the period August 16 to December 31, 1932. Said amount of $379.13 represents the difference between the net income of $620.87 and $1,000, the amount of the personal exemption credit. It is accordingly urged that the deductions in the amounts of $4,958.05 and $839.90 in the case of Bessie P. Douglas and $379.13 in the case

of the estate of Charles H. Robinson produced no "tax benefit" and that the said amounts should not therefore be included in their 1937 income.

The respondent, relying on *Beckridge Corporation*, 45 B. T. A. 131, on appeal to the Circuit Court of Appeals for the Second Circuit, contends that the full amount should be included in 1937 income, regardless of "tax benefit" in the years of deduction. In that case the taxpayer, in 1931, acquired certain real estate which it sold in 1937. During the period of ownership there was actual depreciation of the property, but the taxpayer, operating at a net loss during each of the years, took no deduction for such depreciation either on its books or on its income tax returns. The question presented was whether, for the purpose of computing gain or loss on the sale, the cost basis of the property was to be reduced on account of depreciation occurring during the period of ownership. We there considered the rule of *United States* v. *Ludey*, 274 U. S. 295, and other related cases, which is to the effect that when a taxpayer sells a depreciable property after years of use, the property sold is not the original property but the original property reduced by the depreciation sustained thereon, and that accordingly depreciation must be deducted from the original cost in order to determine the cost of what was disposed of by the sale. In accordance with that rule and the pertinent provisions of the applicable act, we held that the cost basis of the property sold by the Beckridge Corporation was to be reduced by the depreciation allowable with respect to the property during the period of ownership by the corporation.

We fail to see wherein our decision in *Beckridge Corporation*, *supra*, is controlling here. In urging the applicability of that decision here the respondent assumes a position contradictory to that taken on the first issue herein. In the instant cases no property was sold nor was any depletion actually sustained. The lessors merely took and were allowed certain deductions for depletion which it was anticipated they would sustain. Upon termination of the lease in 1937, no ore having been extracted, it was found that the anticipated depletion had not been sustained and never would be sustained. The respondent thereupon included in income for 1937 the depletion deductions allowed in prior years, thereby in effect determining that the deductions so allowed were not in fact allowable deductions. Cf. *Kennedy Laundry Co.*, 46 B. T. A. 70.

In support of their claim the petitioners rely on *Central Loan & Investment Co.*, 39 B. T. A. 981; and *Amsco-Wire Products Corporation*, 44 B. T. A. 717. In *Estate of James N. Collins*, 46 B. T. A. 765, and *John V. Dobson*, 46 B. T. A. 770, we had occasion to review the

decisions relied on by the petitioners herein and, in the case of *John V. Dobson*, said:

Where there is recovery in respect of a loss sustained in an earlier year and a deduction of such loss claimed and allowed for the earlier year had effected an offset in taxable income, the amount recovered in the later year should be included in taxable income for the year of recovery, the reason being that even though the subsequent recovery is in the nature of a capital recovery the prior deduction of the amount of the loss from taxable income has for income tax purposes already given the taxpayer a recoupment of said loss out of taxable income and the subsequent recovery, being in the nature of a replacement of taxable income, is equivalent to gain to the taxpayer. *National Bank of Commerce of Seattle* v. *Commissioner*, 115 Fed. (2d) 875, affirming 40 B. T. A. 72. But where the deduction claimed and allowed in the prior year did not effect an offset of taxable income, the amount recovered in a later year does not constitute taxable income for the year of recovery. *Estate of James N. Collins, supra.*

Applying the rule to the case of Bessie P. Douglas, who had a net loss of $13,947.51 for 1933, it is apparent that the depletion deduction of $4,958.05 taken in that year did not effect an offset in taxable income, since she had a net loss for that year of $8,989.46 aside from the depletion deduction. Accordingly we hold that the respondent erred in including said $4,958.05 in income for 1937.

After taking a depletion deduction of $6,197.56 in 1934, Bessie P. Douglas still had a net income of $3,160.10 for that year; likewise the estate of Charles H. Robinson still had net income of $620.87 for the period August 16 to December 31, 1932, after the allowance of depletion in the amount of $431.19. From this it is clear that the entire amount of said depletion allowances effected offsets in the income of these taxpayers for the taxable periods mentioned and are to be included in income for the year in which the lease was canceled. *John V. Dobson, supra; Central Loan & Investment Co., supra; National Bank of Commerce of Seattle*, 40 B. T. A. 72; affd., 115 Fed. (2d) 875; and *Amsco-Wire Products Corporation, supra.*

The respondent's action in including in taxable income for 1937 the depletion deductions taken and allowed in prior years is sustained in all the cases involved in these proceedings except as to $4,958.05 in the case of Bessie P. Douglas.

It is stipulated that Bernice B. Dalrymple is transferee of assets of the estate of Irene B. Robinson Cirkler, deceased, and the pleadings establish the extent to which she may be so held.

*Decisions will be entered under Rule 50.*