MARY F. WAGGONER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. J. WAGGONER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 104161, 104162. Promulgated September 22, 1942.

*Robert Ash*, *Esq.*, and *C. C. Parfet*, *C. P. A.*, for the petitioners. *Frank B. Appleman*, *Esq.*, for the respondent.

700

## OPINION.

HARRON: The question under the main issue is whether or not petitioners' gift of one-half of their interest in royalties and revenues which might arise from oil and gas leases after the date of the gift constituted a partial "termination" of oil leases which had not produced oil or gas prior to the gift, within the purview of subsection (c) of article 23 (m)–10 of Regulations 101, which is set forth in the margin,[3] so as to require petitioners to return as income in the year of the gift the proportionate amount (one-half) of the statutory percentage depletion allowances taken on the cash bonuses which were received upon the execution of the particular leases, notwithstanding the fact that the leases were in full effect under their terms at the date of the gift, and no gift was made of any part of the cash bonuses which, rather, were retained in full by the petitioners.

The particular question has not been raised before this Board before.

---

[3] (c) If for any reason any such mineral lease expires or terminates or is abandoned before the mineral which has been paid for in advance has been extracted and removed, the lessor shall adjust his capital account by restoring thereto the depletion deductions made in prior years on account of royalties on mineral paid for but not removed, and a corresponding amount must be returned as income for the year in which the lease expires, terminates, or is abandoned.

The respondent's theory will be better understood if background is sketched briefly. Following the decision in *Herring* v. *Commissioner*, 293 U. S. 322, respondent's general counsel issued G. C. M. 14448, Cumulative Bulletin XIV-1 (1935), p. 98, under which he ruled that "A depletion deduction on the percentage of income basis is * * * allowable in every case of a bonus payment received in advance of production" and that under article 216 (c) of Regulations 69, which provides substantially as does article 23 (m)-10 (c), a taxpayer must restore to income the amount of a bonus depletion deduction taken on the percentage of income basis as of the year of the termination of a lease where there has been no production from the leased premises, just exactly as he must do where a bonus depletion deduction has been taken on the cost basis. That ruling has received the approval of this Board and one of the Circuit Courts of Appeal (C. C. A., 5th Cir.). *Grace M. Barnett*, 39 B. T. A. 864; *J. T. Sneed, Jr.*, 40 B. T. A. 1136; affd., 119 Fed. (2d) 767; rehearing denied, 121 Fed. (2d) 725; certiorari denied, *Thompson* v. *Commissioner*, 314 U. S. 686; *Dolores Crabb*, 41 B. T. A. 686; affd., 119 Fed. (2d) 772 (remanded on another point, 121 Fed. (2d) 1015). It appears that a rule is now established that, even where the statutory deduction for depletion on a bonus is taken on the percentage of gross income basis, under section 114 (b) (3) (Revenue Acts of 1936 and 1938), when the lease is terminated, abandoned, or expired before mineral has been extracted, the taxpayer must "restore to income" the amount of such deduction as of the year of the termination of the lease. If, on the other hand, there has been actual production from the lease, however small, prior to the termination of the lease, there is no duty to "restore to income" the bonus depletion deduction previously taken on the percentage of income basis, because there has been actual depletion, though small in amount, percentage depletion having no relationship to cost. *Dolores Crabb*, *supra*.

In this case the reason that respondent made the restoration to income of one-half of the bonus depletion deductions is because petitioners' legal interests in the leases, in the future royalties on production under the leases, were *diminished* by one-half by virtue of a gift to a trust in the taxable year. None of the leases had beeen terminated, abandoned, or expired. But respondent seeks here to extend his regulation, under a new interpretation, to apply to the case where an interest in an oil lease is reduced by a gift. Respondent argues that, since the statutory depletion allowance on a bonus on a lease is a deduction "for anticipated depletion or exhaustion of the oil and gas reserves," when petitioners divested themselves of one-half of their interest in the land and the oil and gas reserves at a time when no production had ever been had under the leases, it became certain that the petitioners never

could have any depletion on the one-half of the oil and gas for which they had previously received a depletion deduction, and that, therefore, the leases had "terminated," in so far as petitioners were concerned, with respect to the one-half interests which were given away.

Respondent's theory is not sound when tested by the meaning of the percentage of income method of computing depletion.

Petitioners continued to have an economic interest in oil under the leases in question after the gifts, and, of course, stood in a position where their interests, or the bonuses on the leases in question, still were subject to depletion and exhaustion, the leases being in full force and effect. The deductions for depletion on the bonuses were taken under the arbitrary percentage method. Percentage depletion is not based on cost, or on the value or size of the interest, but is based on gross income from property. It is an arbitrary allowance fixed at 27½ percent of gross income from property during the taxable year. *Louisiana Iron & Supply Co.*, 44 B. T. A. 1244. "Cost" depletion is determined on a different basis from "percentage" depletion. Under the first method of computing the depletion allowance, depletion deductions are limited by the cost or value of the depletable property, and when the cost of the property has been recovered through depletion allowances, no further deductions for depletion are allowable. Under the "percentage" method, "It is possible, and not unusual, for a taxpayer to recover tax free, through percentage depletion, an amount greater than the cost of the property." *Louisiana Iron & Supply Co., supra*, p. 1246. See also, article 23 (m)–1 of Regulations 94, pp. 71, 72. From the above, petitioners having elected the "percentage" method for taking the statutory depletion allowances, it is immaterial, for purposes of article 23 (m)–10 (c), that the interest of petitioners in the leases was diminished under a gift in the taxable year at a time when no production under the leases had yet occurred. Respondent, obviously, confuses the situation here with depletion under the "cost" method. Under "cost" depletion, the total depletion allowance being limited by the cost to the taxpayer of his property, or interest, a diminution in the size of the property or interest retained by a taxpayer would seem to be material, although we do not decide that point here. (Respondent falls into the same error in citing *John D. Lamont* v. *Commissioner*, 120 Fed. (2d) 996, where depletion was computed on the basis of the value of the ore reserve on March 1, 1913.)

It is not necessary to set forth the text of G. C. M. 14448, to which reference is made. It is stated there that "The allowance of the deduction in the year of the execution of the lease rests upon an anticipation of production," and, "If on the termination of the lease there has been no production, then there has in fact been no depletion." It can not be said here that it became certain on April 1, 1938, the date of the gift, that there would be no production under the leases in question. Cf., opinion denying rehearing in *Sneed* v. *Commis-*

*sioner*, 121 Fed. (2d) 725. As a matter of fact, there was production on several of the leases in question after that date. As long as petitioners had an economic interest in the leases and there still remained the leasehold right to carry on production, petitioners had a depletable interest. The bonuses received on the leases were still subject to depletion. As the court stated in the opinion denying a rehearing in the *Sneed* case, "The whole question turns about the bonuses and whether they represent any depletion." Also, here, as opposed to the situation in the *Sneed* case, the question also turns upon a possible productivity under the leases in which petitioners retained economic interests.

Also, as is pointed out in G. C. M. 14448, *supra*:

> * * * For the computation of depletion on the percentage of income basis, the *base* is the gross income from the property. Since * * * a bonus received in advance of production is "gross income from the property" in the case of oil and gas wells, * * * and as such is a part of the *base* for the computation allowed in anticipation of production, such a bonus is subject to depletion without the establishment of any other *base*.

It follows that when statutory depletion is taken on the percentage of income basis, and when the bonus on a lease, the base, is retained by the lessor, the donor of a part interest in the lease, and when there is no occurrence at the time of the gift of an interest in the lease which determines that there will be no production under the lease, then the position of the donor of part of an interest in the lease is no different after he makes a gift of a part interest from what it was before, for purposes of depletion on the bonus and for the purposes of article 23 (m)-10 (c). "Percentage" depletion is an arbitrary method. In each taxable year during the term of the lease, the base which is being depleted is a new and different thing, namely, the gross income from the property received in that year. Such income is apportioned under section 114 (b) (3), by application of the flat percentage, to income and to capital returned through depletion. The depletion allowance of 27½ percent of the income is taken in the year of receipt of income. A capital sum, as is the case in "cost" depletion, is not being recovered over a period of years through depletion. In each year the gross income that is realized from the property in that year is the base for the allowance of depletion. Gross income from the property in each year is a different thing. There is a new base in each year that gross income is realized from the property, and there is a base upon which depletion is allowable for as long as there is income from the lease. That, of course, is not so when the "cost" method of depletion is followed. And that is the reason why different rules must be applied with respect to "restoration" of income with respect to a depletion allowance on a bonus on a lease when "percentage" depletion is the method used and when "cost" depletion is the method used. Just as long as the lessor who

received the bonus retains an economic interest in the lease, the question which respondent has raised here does not arise, as a matter of law. It is only when the lease terminates, in fact, without production, ending the existence of the economic interest, that the question presented here can arise.

Respondent's theory here results from failure to distinguish the different underlying elements in the two methods of computing the statutory depletion allowances. If no distinction is to be made between "cost" depletion and "percentage" depletion on lease bonuses in the situation presented by the gift of an interest in an existing lease, as respondent seems to think, then respondent's treatment here is inconsistent in his failing to apply article 23(m)-10'(c) to the bonuses on the leases which had become productive prior to the time of the gift of a part of petitioners' interests therein. Under respondent's theory, how can it be said that the bonuses on the leases under production were not affected, for purposes of depletion and "recapture" of income for tax, by the diminution of petitioners' interest in those leases because of the gift, in just the same way as in the case of the bonuses on the leases which were not under production? In our opinion the lease bonuses as a whole, on both classes of leases, were not brought within the requirements of article 23(m)-10(c), and the reason for so holding is the same for the bonuses on both classes of leases.

Upon the foregoing discussion it is held with respect to each of respondent's contentions that:

(1) Petitioners were not required in 1938 to return as income one-half of the percentage depletion deductions on the bonuses received on the leases in question in 1937 and 1938, for reasons already stated.

(2) Petitioners, electing the "percentage" depletion method, were entitled to take depletion deductions on the bonuses paid to them in 1938 on the particular class of leases involved, even though during 1938 gifts of one-half of their interests therein were made, because the bonuses were income to petitioners, no one else, and the bonuses were the base in their hands on which to compute depletion, and the depletion allowance could be deducted only by petitioners. *Herring* v. *Commissioner, supra.* The rule that tax is assessed on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, *Burnet* v. *Sanford & Brooks Co.,* 282 U. S. 359, has no applicability under the facts of this case.

(3) Under authority of the *Sneed* case, there is properly restored to the income of petitioners in 1938 the amount of $137.50 which was deducted in 1937 as percentage depletion on the bonus allocable to the part of the Jones lease which was terminated before production in 1938 under the terms of the lease. Respondent "restored" the above amount to petitioners' income in "two bites" of $68.75 each, under his

theory under the main issue, which method was wrong although the result was right. This separate issue in the case demonstrates that no inequity results to respondent under the holding made here under the main issue. No "income" derived from a cash bonus on a lease escapes tax under application of article 23(m)–10(c), strictly according to its terms, to depletion deductions taken on the "percentage" method of depletion by waiting for the occurrence of actual termination of the lease. There is no sound reason for depriving a taxpayer of the full benefit of the "percentage" depletion allowance on a bonus for the reason that his legal interest in the lease is diminished by a gift made at a time when no production has yet taken place, but is still fully possible under the terms of the lease. There may be other considerations having a different effect where a lessor sells an interest in a lease before production has taken place, but that question is not raised here.

Respondent's determination under the main issue is reversed. The provisions of article 23(m)–10(c) are not applicable to the situation presented in the main issue.

Reviewed by the Board.

*Decision will be entered under Rule 50.*