KENNEDY LAUNDRY COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104965. Promulgated January 14, 1942.

*James A. O'Callaghan, Esq.,* for the petitioner.
*E. G. Sievers, Esq.,* for the respondent.

## OPINION.

Van Fossan: The question underlying determination of the stated issue in this case is the proper rate of depreciation applicable to the petitioner's machinery and equipment for the years from 1932 to 1935, inclusive. The petitioner contends that the life expectancy of those assets was 12½ years, effective January 1, 1932; that the depreciation sustained must be computed at the 8 percent rate from 1932 to 1938, inclusive, even though the 10 percent rate had been used from 1932 to 1935, inclusive; and that the unexhausted base cost should be increased to the extent that the depreciation during the latter period was not deducted from income.

The respondent states the issue to be "whether the unrecovered cost for the years prior to 1936 should be reduced by depreciation computed on the 10-year life claimed and allowed, or on the 12½ year life now claimed." He then argues that the 10 percent depreciation used from 1932 to 1935, inclusive, was reasonable in the light of the then known existing conditions and thus should not be disturbed, and, (1) that the 8 percent rate is not applicable because the petitioner has not shown that the 10 percent rate was not availed of in eliminating taxable income; and (2) that the case of *Pittsburgh Brewing Co.* v. *Commissioner*, 107 Fed. (2d) 155 (reversing 37 B. T. A. 439), relied on by the petitioner, is distinguishable and not controlling.

The record sustains petitioner in its contention that a rate of 8 percent for the period from 1932 to 1935, inclusive, was reasonable and should have been used by it. The removal of a large part of its business to the Gary plant and the loss of the Atlantic & Pacific Tea Co. business, occurring just prior to and within the period, respectively, decreased the use of the machinery from 30 to 40 percent. The further facts that in 1937 the petitioner adopted the new rate, with the Commissioner's approval, and that the Commissioner applied it retroactively to the year 1936 are corroborative of the petitioner's position. If the 8 percent rate was "reasonable" for 1936, as determined by the Commissioner, it was equally reasonable for the preceding period during which the circumstances causing the extension of life expectancy arose.

The respondent argues that the depreciation should be computed on the basis of facts known in the taxable year. The pertinent facts *were* known in 1932 and 1933, but they were ignored and the petitioner thereby fell into an error, which was corrected in 1937.

This conclusion brings us to the question of law involved in the determination of the base as of December 31, 1935.

Petitioner cites *Pittsburgh Brewing Co.* v. *Commissioner, supra,* as controlling. In construing section 113 (b) (1) (B) of the Revenue Act of 1932 (identical with corresponding provisions of the Revenue Act of 1936)[1] specifically, the words "to the extent allowed (but not

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. \* \* \*

\* \* \* \* \* \* \*

(n) BASIS FOR DEPRECIATION AND DEPLETION.—The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114.

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \* \*

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. Where for any taxable year prior to the taxable year 1932 the depletion allowance was based on discovery value or a percentage of income, then the adjustment for depletion for such year shall be based on the depletion which would have been allowable for such year if computed without reference to discovery value or a percentage of income;

\* \* \* \* \* \*

less than the amount allowable)", the court in the *Pittsburgh Brewing Co.* case, said:

After full consideration of this question we have reached the conclusion that depreciation is not "allowed" within the meaning of the act unless it is actually taken as a deduction against taxable income.

In the years 1932, 1934, and 1935 petitioner's returns showed net losses of $5,221.37, $6,222.36, and $5,385.88, with claims for depreciation in the respective amounts of $22,387.60, $17,306.73, and $17,694.44. To the extent of the net loss in each of these years petitioner received no tax advantage from the depreciation deduction. Under the ruling in the *Pittsburgh Brewing Co.* case, depreciation was accordingly not "allowed" in the full amount of 10 percent claimed by petitioner in its returns. We, therefore, turn to the "amount allowable" which we have found should be computed at a rate of 8 percent for the years 1932, 1933, 1934, and 1935.

We hold that, to the extent that it received no tax advantage in such preceding years, petitioner's base for depreciation as of December 31, 1935, should be computed by employing a rate of 8 percent for the years 1932 to 1935, inclusive. This holding is not inconsistent with the conclusion reached in *Beckridge Corporation*, 45 B. T. A. 131, where the taxpayer had never taken depreciation in preceding years and the Board sustained the Commissioner in holding that the basis should be adjusted for the "amount allowable." In the *Pittsburgh Brewing Co.* case the court reached the same conclusion on a different set of facts.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH and STERNHAGEN dissent.

---

DISNEY, dissenting: I find it impossible to agree with the majority opinion in this proceeding, first, because I do not think that the petitioner has made the proper showing that he received no tax benefit from the depreciation "allowed" in previous years, and, second, because I do not think that it can reasonably be said to have been the intent of Congress that depreciation be considered "allowed" only in case there is net income to offset it.

First, as to the showing made by the petitioner: It was petitioner's affirmative burden on its theory to show that the depreciation allowed did not affect and counterbalance taxable income. The showing made was that in each taxable year there was net loss in a certain amount, and depreciation claimed and not denied by the Commissioner in a greater amount; and from such showing alone the majority concludes that "To the extent of the net loss in each of these

years petitioner received no tax advantage from the depreciation deduction." For example, as to the year 1932, the petitioner had gross income of $279,043.96; net loss of $5,221.37, and total depreciation of $22,387.60. From these facts alone the majority opinion holds, as I understand it, that there was no tax advantage to the petitioner to the extent of $5,221.37, but that there was tax advantage for the remainder of the $22,387.60. I do not agree that the mere fact of the net loss proves the lack of tax advantage in that amount. Taking the year 1932, and the above figures as an example, it is apparent that the petitioner had set up in its return $284,265.33 in items for deduction, since it returned a net loss of $5,221.37 above gross income of $279,043.96. The majority opinion in substance is that the net loss was caused by one item, to wit, depreciation of $22,387.60, out of the possibly many deducted items totaling $284,-265.33, that is, that such item was the particular one which put the petitioner's account "in the red." Omitting the depreciation item, and subtracting $22,387.60 from $284,265.33, leaves $261,877.73 of deductions, and, compared with gross income of $279,043.96, such total of deductions left the petitioner, not with a net loss, but with a net profit of $17,166.23. The majority opinion amounts to saying that such profit was wiped out and converted into a net loss of $5,221.37 by the item of depreciation. I can conceive no reason for saying that it was that particular item of depreciation which caused the net loss. Depreciation is in the same category with all other deductible items. It is based upon wear and tear upon properties, which wear and tear contributes as much to the production of the gross income as does current expense, for example. I therefore discern no reason to distinguish between the deductible items making up the total of $284,265.33 and to say that any one of them caused the net loss. Plainly no single item caused the total. Though it well may be that depreciation should logically be considered as contributing to the net loss, I can see no rational principle under which to consider it so to do except ratably in the proportion that $22,387.60 bears to $284,265.33. In other words, the net loss is seen to be caused by depreciation, only to the extent of the fraction of 22,387.60/-284,265.33 of $5,221.37. If the net loss be not apportioned as above, then the only other way in which the petitioner can show depreciation of tax benefit is to show that he had no gross income to be offset by the depreciation, or that the gross income was less than the item of depreciation, in which case it seems obvious that *pro tanto*, to the extent of the gross income offset, the petitioner would have tax advantage, but above that figure would have none. Of course, a showing that there was, in most cases at least, no gross income would in effect negative a showing that the property is "used in the

trade or business" within the text of section 23 (1), Revenue Acts of 1936 and 1938, and indicate the lack of right to deduct depreciation. In my opinion, only by prorating net loss among deductions, or by showing no gross income, or gross income less than depreciation item, can the petitioner demonstrate in whole or in part that the depreciation item was of no tax advantage. I know of no authority involving the present question and the necessity by the petitioner of an affirmative showing of no tax advantage, which indicates that a showing thereof is made merely by showing net loss. Therefore, assuming the soundness of the principle that depreciation is not "allowed" within the statute here involved, unless it confers tax advantage, petitioner in my opinion has wholly failed to make such showing, unless it be to the very small fractional extent above indicated on the theory of apportioning net loss in the ratio of depreciation to total deductions.

Moreover, I do not believe that Congress intended the result which follows the theory adopted by the majority opinion. It seems a strained construction of language beyond its ordinary use in tax matters and seems to lead to an unadministrable result in many cases. In my view, Congress simply intended to add something to the previous statute. Had it not intended to do so, no amendment would have been necessary. The previous statute required that the taxpayer be charged with "allowable" depreciation, by which I understand is meant some attempt at reasonable approximation of the actual wear and tear upon the property involved. Surely no amount less than such reasonable amount was covered in the amendment, for such lesser amount was already included within and covered by the "amount allowable" under the former statute. Congress therefore is seen to have legislated with the view to an amount greater than the "amount allowable." I think that Congress merely and simply meant to say that if the taxpayer claimed and the respondent did not oppose (or if without claim the Commissioner considered in arriving at the deficiency) an amount greater than the amount "allowable", then such figure must be used to adjust the base of the property involved. Nothing was said, and I think nothing was in fact within the contemplation of Congress, as to what the result would be upon the basis of property in the future. In ordinary parlance or thought as to income tax matters the word "allowed" means in effect "considered in arriving at the net tax result for the year", and in my opinion that is all that Congress intended in the section here being considered. The word "allowed" was first used in this respect in section 202 (b), Revenue Act of 1924, where adjustment is required in computing gain or loss from sale or other disposition of property for wear and tear "previously allowed

with respect to such property." It appears from the committee reports in connection with that statute that in the form the bill had taken in the House the words "properly chargeable" were used, and on this subject the Senate Committee Report says: "To remove a possible ambiguity in the House Bill, the deductions are limited to those 'previously allowed' rather than those 'properly chargeable'." The Revenue Act of 1926, section 202 (b), changed the expression to "allowable", which was by section 113 (b) (1) (B) of the Revenue Act of 1932 changed to "extent allowed (but not less than the amount allowable)." It seems to me that Congress in 1932, as it did in 1924, used the word "allowed" in order "to remove a possible ambiguity", that is, intended in order to make the matter definite, to say that if a depreciation item was "allowed" in the sense that a claim therefor was not opposed or the depreciation was given effect in determining the tax situation for the year involved, it was to constitute a ground for adjustment of base for the property considered. I think that was all that Congress had in mind and that the legislators did not go into more tenuous consideration of tax advantage, or lack thereof in the year of depreciation, but laid down a definite and not unfair rule. The taxpayer had the opportunity of preventing the "allowance" of more depreciation than necessary (above the "amount allowable" or reasonable amount). He could limit his claim, withdraw it to any extent desired, or oppose its use by the Commissioner. This being within his power, there is no injustice in requiring him, when property basis is considered in later years, to abide by the figure used by him, or permitted by him to be used. The whole matter of depreciation was open for consideration and argument, when the return for the year of depreciation was being considered, in a more salutary way than as an afterthought in a later year when basis of property comes up for attention. The requirement that the matter be settled in the earlier year prevents violation of the year unit of taxation and furnishes a rule which is practicable and administrable, whereas in many cases the rule approved by the majority opinion would obviously not be administrable and might lead to double deductions. Thus, if applied to years prior to January 1, 1933, when the net loss carry-over was abolished, the majority rule here established might result in a taxpayer recouping the tax advantage lost in 1929, for example, in his basis upon sale in 1931, yet also recoup the net loss of 1929 by applying it to the year 1930 under the net loss carry-over provision, when his return for 1930 is passed upon, in 1932 for instance, after the sale of the property involved, thus getting tax advantage twice for the same amount. On the other hand, if such double deduction is to be avoided, the recoupment of the net loss by consideration

thereof in the basis upon later sale of the property under the majority view herein must be delayed (in years when net loss carry-over is allowed) until after the closure of the tax return for the year following the net loss—and even for the third year, where the net loss may be carried over to the third year, such as under section 206 (b) of the Revenue Acts of 1924 and 1926, and section 117 (b) of the Revenue Act of 1928. In this connection it should be noted that the Revenue Act of 1938 restored the idea of the net loss carry-over in section 26 (c) (1), where credit is given therefor, and in section 117 (e) as to net short-term capital losses which shall be treated as such in the succeeding taxable year, with an exception not affecting the present question. These considerations are ample, it seems to me, to show the lack of practicability in departing so far from the year-unit rule of taxation as is permitted by the majority opinion.

For all of the above reasons I respectfully dissent.

ARNOLD agrees with this dissent.