THE QUEENSBORO CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95628.   Promulgated May 28, 1942.

*William S. Siemon, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

**OPINION.**

HILL: The first issue to be determined is whether the loss sustained by the foreclosure sale was an ordinary loss or a capital loss within the meaning of section 117, Revenue Act of 1934, and the deduction limited to $2,000 by section 117 (d) (hereinafter all sections not otherwise specified are from the Revenue Act of 1934). It is settled law that a foreclosure sale is a sale within the meaning of that section. *Electro-Chemical Engraving Co.* v. *Commissioner*, 311 U. S. 513; *Helvering* v. *Hammel*, 311 U. S. 504; *Jacob Abelson*, 44 B. T. A. 98. It is also true that the property held for sale to customers in the ordinary course of business does not come within the purview of section 117. *Charles H. Black, Sr.*, 45 B. T. A. 204.

We have found as a fact that the property in question was so held. We feel compelled by the evidence to so find. A short resumé of the evidence upon which this finding is based is pertinent. Petitioner was a corporation which was expressly organized to deal in real estate as well as to carry on numerous other activities in dealing with property. A large "for sale" sign was placed and maintained on the Plaza property and repainted in 1922. Twice the board of directors passed

resolutions authorizing the sale of the property by one of the petitioner's officers. The evidence also shows that petitioner bought and sold large quantities of other real estate. Moreover, petitioner organized and financed various subsidiary corporations for the purpose of purchasing and reselling real estate at a profit. The operation of these subsidiaries was solely for this purpose and, with one exception, the subsidiaries were immediately dissolved when the tract for which each was organized was completely sold. Cf. *Samuel D. Leidesdorf*, 26 B. T. A. 881. Upon the basis of these facts we hold that petitioner is a dealer in real estate. This holding is not affected by the further fact that petitioner was engaged in other businesses. *Florence H. Ehrman*, 41 B. T. A. 652. Moreover, it will be noted that all other forms of business carried on by the petitioner related to the general business carried on by real estate dealers and brokers.

Having found that petitioner is a real estate dealer and that the Plaza property was held for sale to customers in the ordinary course of its business, the loss is an ordinary loss and not a capital loss. *Charles H. Black, Sr., supra.* The next question which is posed for consideration is the amount of that loss. This question arises under section 113 (b) (1) (A), (B), and (C).[1]

Petitioner and respondent have stipulated the portions of the various charges allocable to the improved and unimproved parts of the Plaza property. For the purpose of adjusting the basis of the property it is necessary to discuss each portion separately. The question relating to the improved property is the amount of depreciation which should be deducted in adjusting the basis.

The facts show that the building which was erected on the improved portion cost about $40,000, and its useful life was 35 years. How-

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. Where for any taxable year prior to the taxable year 1932 the depletion allowance was based on discovery value or a percentage of income, then the adjustment for depletion for such year shall be based on the depletion which would have been allowable for such year if computed without reference to discovery value or a percentage of income;

(C) in respect of any period prior to March 1, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained;

\* \* \* \* \* \* \*

ever, petitioner deducted depreciation at a rate which was based upon a longer useful life. Petitioner claims that the basis should be adjusted by the amount of the depreciation which it had actually deducted as an expense item on its income tax returns. Respondent, on the other hand, contends that the basis should be adjusted by the amount of depreciation allowable upon the basis of a useful life of 35 years. Section 113 (b) (1) (B) provides that the basis should be reduced by the depreciation in the amount allowed but "not less than the amount allowable." We hold that, since the useful life was 35 years, depreciation was allowable to a greater extent than that deducted by the petitioner and the basis for figuring the loss upon the foreclosure sale will be reduced by the amount of depreciation allowable. *Herder* v. *Helvering*, 106 Fed. (2d) 153; *Kennedy Laundry Co.*, 46 B. T. A. 70; *Beckridge Corporation*, 45 B. T. A. 131 (on appeal, C. C. A., 2d Cir., Oct. 21, 1941).

The second question which must be decided in arriving at petitioner's loss is the amount of carrying charges on the unimproved property which may be capitalized. There is no issue as to the amount of the taxes to be added to the cost basis. The sole issue arises because petitioner capitalized the interest on all of the mortgages. The parties stipulated that petitioner had done this. We understand this to mean that petitioner did not deduct the interest on any of its tax returns. Ultimately the property was encumbered by a $150,000 first mortgage as well as a $75,000 second mortgage. The original $50,000 first mortgage had been paid off out of the proceeds of a later first mortgage. Section 113 (b) (1) (A) provides that the basis of unimproved property shall be adjusted "for expenditures, * * * or other items properly chargeable to capital account, including taxes and other carrying charges." The question in its final form is whether the interest on the later mortgages is a proper item to be capitalized.

Respondent's position is that the interest on the original $50,000 mortgage is the only interest item properly capitalized. However, he admits that the interest on the $50,000 from the time of purchase to the foreclosure is the proper amount. This admission is reasonable even though the mortgage was paid, since there was a satisfaction only by a further borrowing. The substance of this action was the same as increasing the original mortgage. Thus, the question is limited to whether petitioner may or may not capitalize the interest on the subsequent second mortgage and the increased first mortgages. This seems to be a question of first impression.

Prior to the 1932 Act taxes and interest were not considered capital items. *Central Real Estate Co.*, 17 B. T. A. 776; affd., 47 Fed. (2d) 1032; *Westerfield* v. *Rafferty*, 4 Fed. (2d) 590. The Revenue Act of

1932 and subsequent acts have permitted the capitalization of taxes and interest on unimproved and unproductive real property. *Sec.* 113 (b) (1) (A), *supra.* The sole purpose of this subsection appears to be that the taxpayer will be allowed to recover as costs the money which he pays out of his pocket as taxes and other carrying charges on unimproved and unproductive real property. In the absence of the provisions of such subsection payments of taxes and interest would constitute deductions by which the taxpayer could reduce his current taxable income. To permit capitalization of payments in respect of unimproved and unproductive real property, the payments must be such as are properly chargeable to capital account as carrying charges. If a payment is not properly chargeable to capital account it can not be classified as a carrying charge. We do not believe that interest on a mortgage indebtedness is a carrying charge on the mortgaged property unless such indebtedness was assumed or created as part of the purchase price of the mortgaged property or unless such indebtedness itself represents a carrying charge. Otherwise, such interest would not be properly chargeable to capital account and, hence, would not be a carrying charge. The statute allows an adjustment only "for \* \* \* other items *properly chargeable to capital account,* including taxes and other carrying charges on unimproved and unproductive real property \* \* \*." (Italics supplied.) To be "properly chargeable to capital account" an expenditure must bear a reasonable relationship to the property. Paul & Mertens, Law of Federal Income Taxation, vol. II, sec. 18.170.

We fail to perceive how the payment of interest on the further borrowings bore any relationship to the property. Certainly, these borrowings harmed rather than protected or improved the property, since the amount of the liens thereupon was increased. If the borrowings can not be denominated capital expenditures, there is no reason to consider the payment of interest thereupon to be "items properly chargeable to capital account."

Although there is no evidence in the record to show the purpose of the further borrowing, petitioner intimates that it was to pay the carrying charges. We feel that the evidence itself refutes such a position. About five and one-half years after petitioner purchased the Plaza property it borrowed $75,000 on a second mortgage. The total of the carrying charges at this time did not aggregate $75,000. About one month later petitioner borrowed another $75,000, with which it paid the original mortgage. However, this left an excess of $25,000. It appears obvious that the carrying charges for one month could not have been $25,000. In 1926, over eight years prior to the foreclosure sale, petitioner again borrowed an excess, $75,000, over the

amount needed to pay the existing first mortgage. It does not appear that the aggregate of the additional borrowings was needed to meet the carrying charges accrued to the date of this latter borrowing. This evidence makes patent the fact that the additional borrowings had no relation whatsoever to the property. The property served merely as security for petitioner to raise capital. We hold that the interest on such borrowings is not a carrying charge.

The ultimate result reached in this case is that, in computing the basis of the property, petitioner is entitled to capitalize only the stipulated amount of interest attributable to the original $50,000 mortgage and the taxes and special assessments actually paid. The loss thus computed is fully deductible.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK, dissenting: Interest and taxes are deductible annually under section 23. The law is well settled that carrying charges, such as interest and taxes on unproductive property, are not properly chargeable to capital account. However, section 113 (b) (1) (A) of the Revenue Act of 1932 and corresponding provisions of subsequent acts, as interpreted by the Commissioner (see I. T. 2664, XI-2 C. B. 43, and I. T. 2702, XII-2 C. B. 76), allow the owner of unproductive real estate an alternative method of recovering such carrying charges tax free. If the taxpayer does not care to deduct them annually under section 23, he may charge these items to capital account, thus increasing his basis for gain or loss on the property, and recover the items tax free as a lump sum adjustment upon the disposition of the property in accordance with this new provision. These carrying charges may be recovered in this way solely because of the statutory provision, not because they are now properly chargeable to a capital account from an accounting standpoint.

The Commissioner, in his interpretation of the statute, has used a peculiar phrase, "interest on real property." This must mean interest on an obligation encumbering the real property. The interest on any mortgage on the property would answer this description. The economist recognizes that property is carried by whatever investment there is in it, regardless of whether the investment is entirely in cash or is partly represented by a mortgage. Cf. *Fraser* v. *Commissioner*, 25 Fed. (2d) 653; *Westerfield* v. *Rafferty*, 4 Fed. (2d) 590. Some of the carrying charges simply become crystalized in the form of interest when a mortgage is put on the property. I see no danger in giving the owner this choice of method for recovering interest on

any mortgage on the property. Ordinarily, the difficulty of borrowing money on real estate mortgages would limit the amount of the borrowings to substantially less than the value of the property. Congress and the Commissioner were apparently content to allow the alternative method of recovering interest on any mortgage on unproductive real estate.

The prevailing opinion makes the right to the alternative method depend upon the necessity for the loan and the use to which the money is put. I see nothing to justify this in the statute, in the interpretation placed upon it by the Commissioner, or in the subject generally. It invites litigation by imposing a difficult and sometimes insurmountable burden of proof. It introduces a distinction which is unsound from the standpoint of economics. It may be necessary for one man to borrow nothing in the purchase of unproductive real estate while another may have to borrow a great deal. If they both borrowed the same amount, why should Congress want to treat them differently and who could determine the extent to which the borrowing was necessary? The man who originally gives a mortgage for a part of the purchase price may do so because he wants to use his own money for some other purpose and not because of necessity. A subsequent borrowing to pay taxes and interest may have no greater necessity. Interest on any amount which an owner can borrow on unproductive property is, in fact, a part of the cost of carrying that property. The owner can limit the interest by using cash to buy and carry the property, but he does not thereby reduce his expense of carrying the property. It is only a question of whether he loses the use of his own money or pays someone interest for the use of their money. The alternative method should not depend upon the necessity for borrowing money on the property or the immediate use to which money borrowed on the property is put.

Leech agrees with this dissent.

---

Mellott, dissenting: In my opinion petitioner has failed to sustain its burden of showing that the property was held primarily for sale to customers in the ordinary course of its trade or business. Respondent's determination that it sustained a capital loss under section 117 of the Revenue Act of 1934 should therefore be sustained.

Van Fossan, Disney, and Opper agree with this dissent.