SWANK & SON, INC., a Montana corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 3018.

United States District Court,
D. Montana,
Great Falls Division.

Aug. 27, 1973.

---

Richard F. Gallagher, Church, Harris, Johnson & Williams, Great Falls, Mont., for plaintiff.

Otis L. Packwood, U. S. Atty., Billings, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Does the bonus received by a Subchapter S corporation, the lessor in an oil and gas lease, constitute "personal holding company income"?[1] The Government's motion for partial summary judgment raises the question.

Plaintiff qualified as a Subchapter S corporation in 1960. It was and is actively engaged in the farming and ranching business. In 1965 it executed an oil and gas lease and received a bonus of $34,983.10. This amount constituted 26% of gross receipts for the year 1965. The Commissioner determined that the bonus constituted personal holding company income under the provisions of § 1372(e)(5) of the Internal Revenue Code and declared the Subchapter S election terminated.

Congress had the power to treat an oil and gas lease bonus as personal holding company income. Congress did not, however, use the word "bonus" in the statute, nor was the word "bonus" used in the regulations dealing with Subchapter S corporations. Did Congress, then, intend by the use of the word "royalty" to encompass the oil and gas lease bonus? By 1938 when the first Personal Holding Company Act[2] was enacted (52 Stat. 557) the terms "bonus" and "royalty" had definite meanings in the oil and gas industry[3]—the words did not mean the same thing; no one in the industry thought they did. The word "bonus"

---

1. In 1965 26 U.S.C. § 1372(e)(5) provided:
   (e) Termination.
   \* \* \* \* \*
   (5) Personal holding company income.
   An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains

therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.
   \* \* \* \* \*

2. Reference is made to the Personal Holding Company Act because prior to 1966 what is now described as "passive investment income" in § 1372(e)(5) was described as "personal holding company income."

3. See Carroll v. Bowen, 180 Okla. 215, 68 P.2d 773 (1937), and authorities cited.

was used to describe the consideration paid or agreed to be paid for the execution of a lease and was in no way dependent upon production. The term "royalty" described a share of the production paid in money or kind. As courts described the total consideration flowing to the lessor from an oil and gas lease they uniformly used the words "bonus" and "royalty" and did not any more than did the industry use the word "royalty" as a catch-all for all of the bonuses and other considerations running to a lessor.[4] " '[T]he words of statutes —including revenue acts—should be interpreted where possible in their ordinary, everyday senses.' " Hanover Bank v. Commissioner, 369 U.S. 672, 687, 82 S.Ct. 1080, 1089, 8 L.Ed.2d 187 (1962).

If Congress used the word "royalty" in its ordinary sense it did not by the use of it describe an oil and gas lease bonus.

If the Small Business Corporation Act is examined in light of its general purposes there is nothing which suggests that the word "royalty" should be given some strained meaning. While the term "passive investment income" did not appear in the statute until 1966,[5] it seems clear that Congress did intend to distinguish between the active corporation and the passive corporation in the Personal Holding Company and Small Business Corporation Acts.

When the "passthrough" type of tax treatment was provided for corporations, Congress decided to limit the availability of this treatment to small businesses actively engaged in trades or businesses. Therefore, it denied this treatment to corporations with large amounts of passive income. Accordingly, present law (sec. 1372(e) (5)) provides that a "passthrough" election is to terminate automatically where more than 20 percent of a corporation's gross receipts are derived

from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities . . . U.S. Code Congressional and Administrative News, Vol. 2, 1966, p. 2148

In light of a congressional purpose to distinguish between active and passive income there is some reason for believing that a bonus should not be placed in the passive category. A bonus is, as to a given piece of land, often a one-time thing. If production is not had the land becomes relatively unattractive to future lessees and if production is had ordinarily the oil and gas is exhausted under the one lease. The bargaining for the oil and gas lease is in itself an active part of the management of the land. It could involve the expenditure of substantial amounts of the lessor's time and certainly involves the exercise of judgment in the resolution of the questions of whether to lease and on what terms. Once the lease is executed and production obtained the royalties come automatically without effort or without the exercise of judgment. Ordinarily the lessor can remain completely passive and receive royalty payments, not once, but periodically over the life of the oil and gas deposit. The thought that Congress may have omitted the word "bonus" from the definition of personal holding company income for the reason that the bonus does arise out of some effort and exercise of judgment is in a measure confirmed by the fact that when Congress amplified the definition of the word "royalties" in the Personal Holding Company Act (26 U.S.C.A. § 543, Revenue Act of 1964 § 225(d), 78 Stat. 19), it not only indicated an awareness of oil and gas terminology, but it did not mention the word "bonus." It did specifically mention production payments and overriding royalties. The income from production payments and overriding royalties comes to the owner of the right without the expenditure of effort

4. See Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932); Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318 (1932).

5. Act of April 14, 1966, 80 Stat. 115.

or the exercise of judgment on the part of the owner and is what could be regarded as passive income. For these reasons it is my opinion that the word "royalty" does not embrace the word "bonus" and that the receipt of the oil and gas bonus in 1965 did not terminate the Subchapter S election.

I am not persuaded to the contrary by the case law. The case of Commissioner v. Clarion Oil Co., 80 U.S.App.D.C. 41, 148 F.2d 671 (1945), does define an oil and gas bonus as an "advance royalty." The basis of the decision is found in this language at page 673:

> . . . By reference to decisions of the Supreme Court, applying this rule, it convincingly appears that in cases involving claims to "depletion" deductions, *the Court has consistently rejected the generally accepted definitions of the word "bonus" as describing a cash consideration paid for the execution of a lease and held it to be what is called an "advance royalty"*— or, transposed, a royalty paid in advance and in all respects subject to depletion as a *royalty* arising out of a share of the product reserved. . . . (Emphasis supplied.)

It is my opinion that what is said in the quotation, and particularly the emphasized (underscored) portion of it, is simply not so. The cases upon which the court relied were concerned with those parts of the revenue acts which taxed income as distinguished from capital gains and which provided for a deduction from gross income of a reasonable allowance for depletion "in the case of oil and gas wells." [6] The courts decided that an oil and gas lease was not a sale and that "[b]onus and royalties are both consideration for the lease and are income of the lessor. We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than

royalties which are measured by the actual production. . . ." (Burnet v. Harmel, 287 U.S. 103, 112, 53 S.Ct. 74, 77 (1932)); and that ". . . the bonus and royalties paid to the lessor both involve at least some return of his capital investment in oil in the ground, for which a depletion allowance must be made . . ." (Murphy Oil Co. v. Burnet, 287 U.S. 299, 302, 53 S.Ct. 161, 162 (1932)). In other decisions the Court used language such as ". . . bonus payments to a lessor of a mineral lease are to be *treated* as advance payments of royalties and depletion allowed. . . ." (emphasis supplied) (Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 313, 53 S.Ct. 150, 151, 77 L.Ed. 325 (1932)); and "[c]ash bonus payments, when included in a royalty lease, are *regarded* as advance royalties and are given the same tax consequences . . ." (emphasis supplied) (Anderson v. Helvering, 310 U.S. 404, 409, 60 S.Ct. 952, 955, 84 L.Ed. 1277 (1940)). That two things are for a given purpose *treated* the same or *regarded* as the same does not make them the same.

In none of the cases cited in Commissioner v. Clarion Oil Co., *supra*, did the court consider a statute using the words "royalty" or "bonus." In none of the cases was there a problem as to the meaning of the words "bonus" and "royalty." The cases do no more than say that in the context of the problem facing the court both bonuses and royalties were part of the considerations for oil and gas leases and were therefore a part of a gross income and that because they both represented a compensation for a capital asset consumed (Anderson v. Helvering, *supra*) were entitled to a depletion allowance. I cannot believe that a court should, on the basis of Supreme Court decisions applying statutes not using oil and gas terms and basically saying no more than that in the particular problem before the court a bonus and a royalty were to be treated the same, infer a congressional intent to use these

---

6. *See* Herring v. Comimssioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389 (1934).

words in an artificial sense in any tax statute that might be enacted.

In Bayou Verret Land Co. v. Commissioner, 450 F.2d 850, 854 (5th Cir. 1971) the court said that a bonus was a royalty for the purpose of the Personal Holding Company Act:

. . . indeed, since the terms "lease bonus" semantically appear to straddle the statutory categories of "mineral, oil or gas royalties" and "rent"—we have no doubt that the lease bonus falls within one category or another. The question is which one. (Footnotes omitted.)

And again at p. 855:

Our conclusion is reached with respect to a hybrid category of income not expressly provided for in the statute, which, as a matter of semantics is not clearly either rent or royalty, and as to which the legislative history of the statute is unrevealing.

I do agree that there is a "semantic straddle" if the term "bonus" must be embraced within either the terms "rent" or "royalty." I also agree that income from an oil bonus is not expressly provided for in the statutes and it may be that it is a hybrid type of income, but there is no problem in defining the terms "bonus" and "royalty," whether reference be had to the language of the oilfields, the dictionary, or the law book. As between the proposition that a Congress knowledgable about oil and gas terminology stretched the meaning of the word "royalty" to include "bonus" and the proposition that the word "bonus" did not appear because it was not the purpose to treat a bonus as personal holding company income, I would choose

the latter. Perhaps it would have been simpler to say that I entertain the notion that when a precise word exists Congress should use the word if it intends that the thing described by it have tax consequences.

The term "rent" is not generally used in the oil and gas leases except in connection with "delay rentals," which are rentals paid for the purpose of delaying the drilling obligation. Carroll v. Bowen, 180 Okla. 215, 68 P.2d 773 (1937). Rent in an ordinary lease pays for a right to use land for some period but does not embrace a right to deplete the land as does the oil and gas bonus. All of the reasons which lead me to believe that Congress did not intend to stretch the word "royalty" to embrace the word "bonus" lead me to believe that it did not intend to stretch the word "rent" to embrace an oil and gas bonus. Clearly under the Personal Holding Company Act the term "rent" is not considered in connection with oil and gas income. Thus 26 U.S.C. § 543 defining personal holding company income treats rents in § 543(a)(2) and mineral, oil, and gas royalties in § 543(a)(3). The segregation of rent income and oil and gas income does not appear so clearly in § 1372 of the Small Business Corporation Act where the personal holding company income is more succinctly defined, but if reference is to be had to the Personal Holding Company Act as I think it is[7] in the interpretations of the Small Business Corporation Act, then it seems quite clear that Congress was not thinking in terms of oil and gas lease income when it used the word "rent."[8]

Defendant's motion for partial summary judgment is denied.

7. House v. Commissioner, 453 F.2d 982 (5th Cir. 1972).

8. Although I have disagreed with the decisions in Commissioner v. Clarion Oil Co., 148 F.2d 671 (D.C.Cir.1945), and Bayou Verret Land Co. v. Commissioner, 450 F.2d 850 (5th Cir. 1971), they do reach the conclusion that a bonus is not rent.