TOTAL PETROLEUM, INC v DEPARTMENT OF TREASURY

Docket No. 93023. Submitted April 16, 1987, at Lansing. Decided
    August 1, 1988. Leave to appeal applied for.

Petitioner, Total Petroleum, Inc., in computing its single business
    tax base for the tax years 1977 through 1980, made no adjust-
    ment to business income for the leasehold bonus costs it had
    written off as losses for federal tax purposes. Respondent,
    Michigan Department of Treasury, determined that the lease-
    hold bonus costs written off as losses should be treated as
    royalty expenses which, under the Single Business Tax Act
    (SBTA) in effect for those tax years, the petitioner was required
    to add, to the extent deducted in arriving at federal taxable
    income, in arriving at its tax base. Total Petroleum brought a
    petition for review in the Michigan Tax Tribunal following an
    assessment by respondent of $27,825 plus interest. Both parties
    moved for summary disposition. The Tax Tribunal granted
    respondent's motion based on the determination that leasehold
    bonus costs are royalties within the meaning of the SBTA.
    Petitioner appealed.

    The Court of Appeals held:

    1. There was no improper rulemaking by the respondent.

    2. The Tax Tribunal did not err in construing "all royalties"
    within the meaning of § 9(4)(g) of the SBTA as including the
    lease bonuses written off by petitioner for nonproductive prop-
    erty.

    3. In following the long-run view of income and production
    taken by the federal courts, the "bonus" is to be viewed as of
    the time the lease is executed and the "bonus paid." It is
    proper to regard the lessee, petitioner, as the proper value-
    added tax taxpayer on expected production. Adding back the
    leasehold bonus costs as a royalty comports with the intent of
    the SBTA.

    Affirmed.

    SHEPHERD, J., dissented. He noted that leasehold bonuses and

REFERENCES

Am Jur 2d, State and Local Taxation §§ 254 et seq.

Expenses and taxes deductible by lessee in computing lessor's oil
    and gas royalty or other return. 73 ALR2d 1056.

royalties are treated differently both in the oil and gas industry and by the federal tax laws. It is his belief, given the substantive distinction between the two payments, that leasehold bonuses do not fit within the definition of royalty under the SBTA. He would not require petitioner to add back its leasehold bonus costs for SBTA purposes.

TAXATION — SINGLE BUSINESS TAX ACT — TAX BASE — OIL AND GAS — ROYALTIES — LEASEHOLD BONUSES.

> The Single Business Tax Act in effect for the tax years 1977 through 1980 requires a taxpayer to calculate its single business tax base by adding to its federal taxable income, to the extent deducted in arriving at federal taxable income, all royalties; a leasehold bonus paid by a gas and oil producer to a landowner as consideration for executing a lease for the exploration and development of oil and gas reserves on the land which is deducted in arriving at federal taxable income is a royalty within the meaning of the act (MCL 208.9[4][g]; MSA 7.558[9][4][g]).

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Kenneth W. Beall*), for petitioner.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Richard R. Roesch* and *Charles E. Liken*, Assistant Attorneys General, for respondent.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

B. A. JASPER, J. This case involves an appeal as of right from a Michigan Tax Tribunal decision upholding a single business tax assessment of $27,825 plus accrued interest for the tax years 1977 through 1980. Petitioner disputes the inclusion of certain "leasehold bonus costs" in its single business tax base.

As an oil and gas producer and refiner, petitioner enters into leases for the exploration and

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

development of oil and gas reserves upon the lands of others. Prior to entering into such leases, petitioner conducts preliminary exploration work and undertakes title searches. Lease negotiations are pursued with the owners of the land having development and productive potential on such matters as the royalty interest in production to be reserved by the landowner, the lease term, and the amount of the "leasehold bonus." The leasehold bonus is a one-time payment made to the landowner as consideration for executing the negotiated lease. The amount of the leasehold bonus depends on such factors as the proximity of the leased property to other productive property, the length of the lease term, and the amount of competition for the lease among prospective lessees.

Petitioner initially records all leasehold bonus payments to landowners in a capital account established for undeveloped properties. If a particular leased property is productive, these leasehold bonus costs are transferred to a productive properties capital account, amortized on the corporate books, and depleted over the life of the lease term. If production ceases or continued operations are deemed uneconomical, the lease is reclassified as "dry and abandoned." The lease is then allowed to expire or is released of record. For federal tax purposes, undepleted leasehold bonus costs are deducted as losses in the year the lease expires or is released. By comparison, if a particular leased property turns out to be nonproductive, the lease is reclassified as "canceled or surrendered" upon being voluntarily released or expired. The full amount of the leasehold bonus cost associated with the lease is deducted as loss for federal tax purposes in the year the lease is released or expires.

In computing its single business tax base for the tax years 1977 through 1980, petitioner made no

adjustment to business income for the leasehold bonus costs written off for federal tax purposes. Following an audit, respondent, the Michigan Department of Treasury, determined that the leasehold bonus costs written off as losses should be treated as royalty expenses. Under the Single Business Tax Act (SBTA) in effect for tax years 1977 through 1980, the taxpayer was required to add, to the extent deducted in arriving at federal taxable income, "all royalties" in arriving at its tax base. MCL 208.9(4)(g); MSA 7.558(9)(4)(g).

At a prehearing conference conducted by the Michigan Tax Tribunal, petitioner moved for summary disposition and amended its petition, contending that no material fact existed and that it was entitled to a judgment as a matter of law because (1) the leasehold bonus payments are not royalty payments; (2) including the leasehold bonus costs write-offs in the single business tax base is contrary to the intent of the SBTA; and (3) the assessment violates the purpose of the depletion provisions contained in the taxing statutes. The department filed a cross-motion for summary disposition, contending that the leasehold bonuses constitute royalties for the purpose of the SBTA as a matter of law. Petitioner then filed a second amended petition averring that the assessment was void because it was based on a "rule" adopted by the department without following the statutory rule-making procedures of the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

The hearing officer found for petitioner. However, the Tax Tribunal vacated the proposed order and granted the department's motion for summary disposition, based on the determination that leasehold bonus costs are royalties within the meaning of the SBTA.

The SBTA imposes "a specific tax of 2.35% upon the adjusted tax base of every person with business activity in this state which is allocated or apportioned to this state." MCL 208.31(1); MSA 7.558(31)(1). The tax is imposed on the privilege of doing business and not upon income. MCL 208.31(4); MSA 7.558(31)(4). The Michigan SBTA operates to tax the person paying the royalties and not the one receiving them. *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 477; 373 NW2d 730 (1985). It is best understood as a value-added tax, although it is not a pure value-added tax. *Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 234; 362 NW2d 618 (1984).

The SBTA, § 9(1), begins the calculation of the tax base with federal taxable income. Certain items are then added to or subtracted from the federal taxable income. The SBTA, § 9(4),[1] the provision at issue in this case, provided the following for tax years 1977 through 1980:

> (4) Add, to the extent deducted in arriving at federal taxable income:
>
> \*   \*   \*
>
> (g) All royalties.

The SBTA does not define "royalties."

Before determining whether royalties include the leasehold bonus costs write-offs, we first reject petitioner's argument that there has been some improper rule making here. As just noted, royalties was never defined. In any event, an administrative agency need not always promulgate rules

---

[1] Although not relevant to the tax years in question, 1985 PA 27 amended the statutory provision, commencing July 1, 1985, by excepting from the add-back requirement "oil and gas royalties which are excluded in the depletion deduction calculation under the internal revenue code."

to cover every conceivable situation before enforcing a statute. *DAIIE v Comm'r of Ins,* 119 Mich App 113, 117; 326 NW2d 444 (1982), lv den 417 Mich 1077 (1983).

We have some guidance in determining the meaning of "all royalties" as used in § 9 of the SBTA from *Mobil Oil Corp, supra,* and from MCL 208.2(2); MSA 7.558(2)(2), which states:

> (2) A term used in this act and not defined differently shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes.

We also bear in mind that the primary object of our statutory construction is to ascertain and give effect to the intent of the Legislature, *In re Condemnation of Lands,* 133 Mich App 207, 210-211; 349 NW2d 261 (1984), lv den 421 Mich 856 (1985), and that interpretations by those charged wtih administering a statute are entitled to considerable weight. *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968).

I

THE TREATMENT OF LEASEHOLD OR LEASE BONUS
COSTS IN FEDERAL INCOME TAX LAW

In *Mobil Oil Corp, supra,* our Supreme Court held that the royalties paid to the landowner-lessor for his share of production are to be added back to the lessee's federal taxable income for SBTA purposes and, thus, are includable in the lessee's tax base. The tax treatment of the "bonus" under

the SBTA was not, however, at issue in *Mobil Oil Corp* and was not decided. Additionally, a recent United States Supreme Court decision addressing the taxation of gas and oil transactions, *Comm'r of Internal Revenue v Engle,* 464 US 206; 104 S Ct 597; 78 L Ed 2d 420 (1984), was not addressed in *Mobil Oil Corp.*

Federal cases addressing the tax treatment of the lease bonus recognize that the term "lease bonus" and "royalty" have definite and distinct meanings in the oil and gas industry. A lease bonus is the "cash consideration paid by the lessee for the execution of an oil and gas lease by a landowner . . . . Bonus is usually figured on a per acre basis." *Engle,* 464 US 209, n 4. Royalty refers to the landowner's share of production, in kind or in value, free of the expenses of production. See *Engle,* 464 US 210, n 5 (defining "advance royalty"), and *Swank & Son, Inc v United States,* 362 F Supp 897 (D Mont, 1973).

The landowner-lessor of the property is required to include both bonus and royalties in income in the year of receipt. The bonus and any advance royalty payments received are regarded as payments received in advance for oil and gas to be extracted. *Herring v Comm'r of Internal Revenue,* 293 US 322; 55 S Ct 179; 79 L Ed 389 (1934).

The lessee is required to report as gross income, for the purposes of computing its tax liability, the full amount of its share of production income, without deducting the bonuses paid to the lessor. *Shamrock Oil & Gas Corp v Comm'r of Internal Revenue,* 346 F2d 377 (CA 5, 1965), cert den 382 US 892 (1965); 34 Am Jur 2d, Federal Taxation, § 7692, p 821. The lessee is also required to capitalize lease bonuses and advance royalty payments and to amortize those costs over the productive life of the well. *Engle,* 464 US 226, n 22; Treas Reg

1.612-3(a)(3) (1987). The purpose of capitalizing these costs is to implement 26 USC 611(b), which establishes a depletion allowance for oil and gas wells, with the condition that it shall be equitably apportioned between lessee and lessor. See *Engle,* 464 US 226, n 22.

The holders of an economic interest in property are permitted to compute a depletion allowance under the cost method as set forth in 26 USC 612. Under the cost method, the taxpayer amortizes the cost of the oil or gas well over the productive life of the well. *Engle,* 464 US 209. If a depletion deduction is taken and there is no production, then the payee of the bonus (lessor) must restore that amount to its capital account and report a corresponding amount as income. Treas Reg 1.612-3(a)(2) (1987); *Commissioner v Engle,* 464 US 210-211.

Those taxpayers satisfying the limitations of 26 USC 613A may utilize the percentage method for computing the depletion allowance contained in 26 USC 613. See *Witco Chemical Corp v United States,* 742 F2d 615 (CA Fed, 1984). The percentage depletion method has historically been preferred due to its more significant tax benefits. *Engle,* 464 US 209. It is computed as a certain percentage of gross income of the property, excluding from such gross income any "rents or royalties" paid or incurred by the taxpayer with respect to the property. Federal courts have long held that the deduction allowed under this method is computed on "*all* income arising from their property, including lease bonuses and advance royalties." Additionally, federal courts have taken a long-run view of the relation between income and production, and have interpreted the Internal Revenue Code as allowing the percentage depletion of all income so long as actual extraction eventually

occurs. *Engle,* 464 US 209, 225. The effect of this view leaves the landowner-lessor with the possibility of having to restore a depletion deduction as income, in the event that oil and gas are not extracted from the ground. For the lessee-petitioner in this case, the lack of production leaves it with the possibility of having to write off its capital investment as a loss for federal tax purposes.

II

THE TREATMENT OF LEASE BONUSES UNDER THE
SBTA, § 9

In *Mobil Oil Corp, supra,* our Supreme Court construed the meaning of all royalties in § 9(4) of the SBTA within the context of the federal tax treatment of gas and oil leases and the common understanding of the term "royalties," which was explained as follows:

> The *Random House College Dictionary* defines "royalty" as:
> "[A] compensation or portion of the proceeds *paid* to the owner of a right, as a patent or oil or mineral right, for the use of it . . . an agreed portion of the income from a work paid to its author, composer, etc., usually a percentage of the retail price of each copy sold . . . a royal right, as over minerals, granted by a sovereign to a person or corporation . . . the *payment* made for such a right." [*The Random House College Dictionary* (rev ed), p 1150. Emphasis added.]
> This definition includes mineral and oil "royalties" with the "royalties" paid for patents and copyrights and refers to them as a "payment." Black's Law Dictionary defines "royalty" as:
> "Compensation for the use of property, usually copyrighted material or natural resources, expressed as a percentage of receipts from using the property or as an account per unit produced. A

payment which is made to an author or composer by an assignee, licensee or copyright holder in respect of each copy of his work which is sold, or to an inventor in respect of each article sold under the patent. Royalty is share of product or profit reserved by owner for permitting another to use the property . . . . In mining and oil operations, a share of the product or profit *paid* to the owner of the property. [Black's Law Dictionary (5th ed), p 1195. Emphasis added.] [*Mobil Oil Corp, supra,* p 484.]

Our Supreme Court concluded that "all royalties" includes "oil and gas royalties" and, in particular, includes the type of royalty payments made by the lessee to the landowner-lessor for his share of production.

Federal case law makes it clear that both royalties and bonuses are treated as part of the gross income associated with the extraction of oil and gas from the ground and that both lessee and lessor have an economic interest in that oil and gas. The bonus in the hands of the lessor, at the time the lease is executed and the bonus paid, constitutes a "capital investment made for the acquisition of an economic interest in a mineral deposit." Treas Reg 1.612-3(a)(3) (1987). The reason for capitalization is to effectuate the equitable apportionment of the depletion allowance between the lessee and the lessor.

In support of the department's position that the bonus constitutes a royalty is *Comm'r of Internal Revenue v Clarion Oil Co,* 80 US App DC 41; 148 F2d 671 (1945), cert den 325 US 881 (1945), which held that the concept of uniformity in federal tax laws requires that a bonus connected to the retention of a royalty interest in oil be treated as a royalty, regardless of whether there was subsequent discovery and production. Also see *Anderson*

*v Helvering,* 310 US 404, 409; 60 S Ct 952; 84 L Ed 1277 (1940) ("[c]ash bonus payments, when included in a royalty lease, are regarded as advanced royalties, and are given the same tax consequences").

We conclude that the long-run view of the bonus taken by the federal courts as of the time the lease is executed should be followed. Thus, the Tax Tribunal did not err in construing "all royalties" within the meaning of the SBTA, § 9(4)(g), as including the lease bonuses written off by petitioner for nonproductive property.

### III

#### THE PROPER TAX TREATMENT OF THE BONUS IN VIEW OF THE INTENT OF THE SBTA TO TAX BUSINESS ACTIVITY RATHER THAN INCOME

A value-added tax (VAT) has as its goal the taxing of the person or entity that adds value to the economy. *Mobil Oil Corp, supra,* p 492. In respect to the royalties given by the lessee to the landowner-lessor for its share of production, our Supreme Court, in concluding that it is the lessee that adds value, stated:

> The answer is plain. The landowner-lessor, in oil and gas leases of this type, is not involved in production at all, but is merely a passive recipient of income. It is the operator-lessee who adds labor, entrepreneurial initiative, and capital (drilling equipment, etc.) to the land in order to extract the raw material, oil or gas. The operator-lessee, not the landowner-lessor, combines inputs and adds value to the economy. Therefore, it is the operator-lessee who is the entrepreneur in oil and gas leases and who "uses" the ⅛ "royalty share" of production according to VAT theory. This means that it is the operator-lessee who is the proper VAT

taxpayer on this ⅛ of production. [*Mobil Oil Corp,
supra,* pp 498-499.]

If one follows the long-run view of income and
production taken by the federal courts and views
the bonus as of the time the lease is executed and
the bonus paid, it makes sense to regard the lessee
as the proper VAT taxpayer on expected produc-
tion. However, if one views the bonus at the time
the property is deemed nonproductive, in whole or
in part, this reasoning would not apply. As a
consumption-type VAT, the SBTA does not tax the
acquisition of investments in capital. See *Mobil Oil
Corp, supra,* p 496. The VAT taxes the use of
resources of society. *Mobil Oil Corp, supra,* p 494.
In the instant case, adding back the leasehold
bonus costs as a royalty comports with the intent
of the SBTA because the value added is the privi-
lege of retaining the property to the exclusion of
other potential competitors. Following the federal
courts' long-run view of these lease transactions,
this Court finds that the better perspective is from
the time of the execution of the lease rather than
the time the property is deemed unproductive. As
such, the bonus is treated as a royalty in the
hands of both the lessee and the lessor. This
characterization is appropriate under the circum-
stances of this type of lease transaction. The deci-
sion of the Tax Tribunal is affirmed.

Affirmed.

CYNAR, P.J., concurred.

SHEPHERD, J. *(dissenting).* I respectfully dissent.
In this case the majority concludes that certain
payments, called leasehold bonuses, constitute roy-
alties for purposes of the Michigan Single Business
Tax and must be "added back" to petitioner's

federal taxable income to arrive at petitioner's "tax base" under the SBTA. MCL 208.9(4)(g); MSA 7.558(9)(4)(g).

Petitioner is in the business of exploring and developing oil and gas reserves. Petitioner researches and investigates properties with potential oil and gas reserves. Petitioner then enters into leases with the owners of property with reserve potential for the purpose of exploring and developing the potential oil and gas reserve. Included in the lease is a royalty provision which grants the landowner a certain percentage share of the profit if, and only if, the leased property proves to be productive. The landowner also receives a "leasehold bonus" as consideration for signing the lease agreement. The amount of this one-time, unconditional bonus payment depends on a number of factors but it is *not* dependent on the productivity of the well. In other words, the bonus differs from a royalty in that the bonus is unconditional, given as consideration for signing the lease and the productivity of the leased property is not a factor in its payment.

Moreover, authoritative oil and gas law treatises apparently agree that there is a distinction between "royalties" and a "leasehold bonus" in the industry:

> Bonus may be defined as a payment made for the execution of an oil and gas lease. It represents market value for a "sale" of the minerals to the lessee. The amount of bonus paid, usually referred to as a per acre amount, may fluctuate widely between properties, depending upon the nature of the development activity in the vicinity. If the land is located in a semi-proven area, or in a logical extension of a proven field the bonus paid may be substantial. On the other hand, if located in a wildcat area, i.e., a new area of development,

or one which has been partially condemned by the drilling of dry holes, the sum may be quite small. Where a lease is abandoned before the end of the first year of the primary term, bonus may constitute the entire return to the landowner.

Although bonus is usually paid in cash, when the amount of bonus is large, a portion may be paid on a deferred basis, out of future production. This may be advantageous to the landowner as it will prevent bunching of income into any particular taxable year.

\* \* \*

As stated above, bonus may be defined as a sum paid for the execution of an oil and gas lease, whereas royalty represents the landowner's share in the fruits of any oil and gas development activity. [Hemingway, The Law of Oil and Gas (2d ed), §§ 2.4, 2.6, pp 50-51, 61.]

See also 8 Williams & Meyers, Oil & Gas Law, Manual of Terms (1987), pp 87-89, 856-858.

Even more significant is the treatment the two types of payments receive under federal tax law. Treas Reg 1.612-3(a)(3) (1987) provides in pertinent part:

In the case of the payor, payment of the bonus constitutes a capital investment made for the acquisition of an economic interest in a mineral deposit or standing timber recoverable through the depletion allowance.

Consistent with the treasury regulation, petitioner expenses royalties in the year in which they are paid, but leasehold bonuses are considered lease costs and are capitalized. Petitioner initially enters all leasehold bonus costs on its books in a capital account established for undeveloped properties. If a particular leased property proves productive, the applicable leasehold bonus costs are

transferred to a productive properties account, amortized and depleted over the life of the lease term. Depletion deductions are allowed under the SBTA, and thus leasehold bonuses paid on productive properties are not subject to taxation.

If a property proves unproductive, i.e., either it is uneconomical or dry, the lease is viewed as valueless and the costs associated with the lease, including any undepleted bonus costs, are deducted as losses, consistent with federal tax rules and regulations, during the year of expiration or release of such lease. In other words, petitioner, as lessee, has acquired a capital asset, i.e., the lease, whose value is unknown at the time of purchase. Federal regulations allow for the loss in value of this asset.

Although leasehold bonuses and royalties are treated differently both in the oil and gas industry and by the federal tax laws, respondent claims that the bonus is a royalty for SBTA purposes. Royalty is undefined in the SBTA. The majority relies on the following statutory provision in its decision:

> (2) A term used in this act and not defined differently shall have the same meaning as when used *in comparable context* in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes. [MCL 208.2(2); MSA 7.558(2)(2).]

I emphasize "in comparable context" because the majority ignores this key phrase when it points to two federal decisions which hold that cash bonuses and royalties in the hands of the lessor should be treated alike for federal income

tax purposes. See *Anderson v Helvering,* 310 US 404; 60 S Ct 952; 84 L Ed 1277 (1940); *Comm'r of Internal Revenue v Clarion Oil Co,* 80 US App DC 41; 148 F2d 671 (1945), cert den 325 US 881 (1945). I cannot concur in the view that this is a "comparable context." Federal tax regulations require the bonus to be capitalized. Under the federal scheme such investment costs are covered by a depletion allowance, presumably designed to encourage exploration and development of natural resources, including oil and gas. Given the substantive distinction between the two payments, I do not believe that leasehold bonuses fit within the definition of royalty under the SBTA. Therefore, I would conclude that petitioner is not required to add back its leasehold bonus costs for Michigan tax assessment purposes.